ALLISON *v.* UNITED STATES (No. 2125).[1]

1. PROTEST MUST BE SIGNED.
   A protest without any signature of any kind is invalid.
2. SIGNATURE TO PROTEST.
   A protest bore the following indorsement on the back: "Protest No. 1809.   Filed Dec. 10/20, W. H. Allison, 67 West Fort St., Detroit, Mich.   Entry No. 1826. Against classification fee paid Dec. 19th, 1920."   W. H. Allison was the importer, but his name appearing in the indorsement can not be taken as his signature to the protest.   For aught that appears the name W. H. Allison may have been placed there by anyone at any time, and, in view of article 645, Customs Regulations 1915, requiring the collector to make such indorsements as the above, was probably placed there by the collector after the protest left the protestant's hands.
3. COLLECTOR CAN NOT WAIVE SIGNATURE TO PROTEST.
   An unsigned protest, treated by the collector as valid and forwarded by him as valid to the Board of United States General Appraisers, is nevertheless invalid, since the collector has no authority to waive the legal requirement that a protest must be signed.

United States Court of Customs Appeals, May 9, 1922.

APPEAL from Board of United States General Appraisers, T. D. 38765 (G. A. 8447).

[Affirmed.]

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellant.
*William W. Hoppin*, Assistant Attorney General (*Harry M. Farrell* and *Samuel Isenschmid*, special attorneys, of counsel), for the United States.

[Oral argument February 24, 1922, by Mr. Tompkins and Mr. Isenschmid.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge,
participating in the decision by agreement of counsel.

MARTIN, Judge, delivered the opinion of the court:
The primary question raised by this appeal is whether a protest must be signed in order to be valid.

---

[1] T. D. 39126.

The merchandise was lumber which was assessed with duty at the rate of 10 per cent ad valorem as cabinet wood under paragraph 169 of the tariff act of 1913.

A protest was filed claiming free entry for the lumber as sawed boards under paragraph 647 of the act, and the collector regularly forwarded it to the board for decision.

Afterwards the protest came on to be tried by the board, and testimony was introduced respecting the character of the merchandise. The case was then submitted for decision. Thereupon the board entered a finding that the protest was wholly unsigned by anyone, and consequently was null and void. For this reason the protest was dismissed, and this appeal is brought to review that decision.

Accordingly it appears that the only question before us is whether the board erred in dismissing the protest as aforesaid.

The consideration of this question may well be resolved into three parts: First, whether the law requires a protest to be signed in order to be valid; second, if so, whether in the present instance the protest in fact was signed as required; and, third, in case the present protest was defective as alleged, whether the proceedings above set out resulted in a waiver of the objection.

Adverting first to the legal requirements: paragraph N, Section III, tariff act of 1913, provides that the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, shall be final and conclusive, unless the owner, importer, consignee, or agent of such merchandise, or the person paying the fees, charges, and exactions other than duties, shall within 30 days after liquidation, if dissatisfied with such decision, file a protest or protests in writing with the collector, setting forth therein distinctly and specifically the reasons for his objections thereto.

It is thus provided that a protest against the assessment of duty can be filed only by the owner, importer, consignee, or agent of the imported merchandise, and that the protest shall be in writing and be filed with the collector.

In an act of Congress, dated February 26, 1845, a right of action was allowed to persons paying duties under protest, for the recovery of such payments if unauthorized by law, but it was provided that such money should not be refunded by the Secretary of the Treasury, nor an action for the recovery thereof be maintained, unless the protest aforesaid should be in writing and signed by the claimant. (S. L., vol. 5, ch. 22.)

However, in an act of Congress dated March 3, 1857, we find the true prototype of the present paragraph N, above referred to. It was provided therein that the decision of the collector as to the liability of imported merchandise for duty, or its exemption there-

from, should be final and conclusive against the owner of such goods, unless such person should within 10 days thereafter give notice to the collector in writing of his dissatisfaction with such decision, setting forth therein distinctly and specifically his grounds of objection thereto. An appeal thereupon was allowed to the Secretary of the Treasury, whose decision in turn became final, unless suit was brought for the recovery of the duties in question within 30 days after such decision. (S. L., vol. 11, ch. 98.)

As has been said, the foregoing enactment may be called the prototype of the present provisions for protest. It was reenacted in substantially similar terms on June 30, 1864. (S. L., vol. 13, ch. 171.) And again in the act of June 10, 1890, in the well-known codification of the administrative provisions. (S. L., vol. 26, ch. 407.) The same provisions were successively reenacted with amendments as part of the tariff revisions of 1897, 1909, and 1913.

Leaving out of view, therefore, the act of 1845 aforesaid, wherein a signature was specifically required upon the protest, it may be said that since the act of March 3, 1857, the law has contained no specific mention of a signature upon the protest, but has required that a protest be in writing and be filed with the collector by the owner, importer, consignee, or agent of the imported merchandise.

At an early date however the department and the board construed these provisions as requiring that a protest must be signed by the protestant in order to be valid. This conclusion was based upon the opinion that in general written notices and pleadings must be signed in order to be effective; that the exigencies of the customs service especially justified that interpretation in this instance; and furthermore that since only the owner, importer, consignee, or agent of the imported merchandise could file a protest respecting it, a signature was necessary in order to identify the protestant accordingly.

In the Adams case, June 22, 1893, T. D. 14233 (G. A. 2197), the board in an opinion by General Appraiser Somerville, held that an unsigned protest was null and void. The following extract is taken from the decision:

We are constrained to overrule the latter protest on the ground that it is not signed by anyone. It was contended in argument that there is no requirement in section 14 of the customs administrative act that the "notice in writing" to the collector, setting forth the grounds of the protestant's objection to the collector's decision, commonly called a "protest," should be signed by anyone. This section is but a condensed revision of sections 2931 and 2932 of the United States Revised Statutes, and these sections were always construed to imply that a protest must be signed by some responsible and interested person, either "the owner, importer, consignee, or agent of such merchandise," or "the person paying such fees, charges, or exactions other than duties," against the payment of which the protest is made. It is true that section 3011 of the Revised Statutes (which, with sections 2931 and 2932, was repealed by section 29 of the act of June 10, 1890), provided in effect that no recovery should be allowed in the action authorized by statute against the collector

for the refund of duties illegally exacted unless the protest was "in writing and signed by the claimant or his agent." The repeal of that section does not, in our opinion, change the principle that a written notice or protest of this kind must be signed by one of the interested parties named in the statute. Notices of dishonor and of protest of commercial paper, notices to quit given by landlords to tenants, notices to produce papers or to plead to an action, and other like notices, when required by law to be in writing, are all required in practice to be signed by the person whose duty it is to give such notice, or by his lawful agent.

It was not the duty of the collector, nor do we conceive it to be our duty, to go outside of the unsigned protest to ascertain by extrinsic evidence who is the responsible protestant. The uniform practice has long been to disregard protests that are unsigned by anyone. The requirement of a signature is a reasonable guaranty against the introduction in protests of impertinent matter and against pragmatism on the part of unauthorized agents.

In the Metzger case, January 8, 1896, T. D. 17822 (G. A. 3756), the board again held to the same effect, in an opinion reading in part as follows:

The uniform practice of the Board of General Appraisers, since its organization under the customs administrative act of June 10, 1890, has been to regard such a paper as a nullity, on the ground that it is not the "notice in writing" required to be lodged with the collector of customs under the provisions of section 14 of said act.

The practice of the courts is also believed to be in harmony with this rule, which was settled In re Adams (G. A. 2197), decided by this board on June 22, 1893. From this decision, although the importers were represented at the hearing by able counsel, no appeal was taken to the courts.

In the Palme case, July 16, 1907, T. D. 28322 (G. A. 6644), the board, when dealing with an importation under the tariff act of 1897, again held that an unsigned protest was a nullity, the former decisions being cited with approval.

In addition to the foregoing decisions the following also may be noted: Protest filed by unauthorized party dismissed by board, December 9, 1891, T. D. 12255; to the same effect, board decision February 4, 1892, T. D. 12443; unauthorized protest dismissed by board, November 14, 1896, T. D. 17629; and again November 18, 1896, T. D. 17631; while on November 20, 1908, T. D. 29359, a typewritten signature was held by the board to be a compliance with the regulations; and analogous rulings in Abstract 3243, T. D. 25698; T. D. 33240; T. D. 35085.

There is no court decision, however, which bears directly upon this subject. The cases of Grandmange v. Schell (32 Fed. 655), Bodart v. Schell (33 Fed. 825), and Florio v. Peaslee (9 Fed. Cases No. 4890), which are sometimes cited in support of the Government's contention, are not directly in point, since they arose under the act of 1845 above noted. The statement of Corpus Juris (vol. 17, p. 648), in reference to protests that a "signature may not be dispensed with," rests upon the various authorities above cited.

On January 25, 1905, T. D. 25996, the Treasury Department issued letters of instructions to the customs service wherein it was directed

that the signature of the importer upon the protest should in all instances be in ink.

In the Customs Regulations, 1908, in article 1070, relating to the "Requirements in protest," it was provided that the signature of the protestant or his attorney should in all instances be in ink. This provision, like that of 1905, necessarily implied that the protest must in all instances be signed.

On June 13, 1914, T. D. 34541, the department issued instructions to collectors upon the subject of protests, and defined a protest to be "A writing addressed to the collector of customs and signed by the owner, importer, or consignee of the merchandise, or by the agent of any of them, objecting to the liquidation of an entry, or to the same decision followed in the liquidation of a number of entries."

In Customs Regulations, 1915, article 644, the foregoing definition of the protest was substantially reaffirmed.

Two of the foregoing departmental regulations, it should be noted, were published prior to the tariff revisions of 1909 and 1913, and those acts reenacted the provisions thus interpreted by the department without change of phraseology in this respect. For the department's authority to establish such regulations, see section 251, Revised Statutes, wherein Congress has provided that the Secretary of the Treasury shall prescribe "regulations, not inconsistent with law, to be used under and in the execution and enforcement of the various provisions of the internal-revenue laws, or in carrying out provisions of law relating to raising revenue from imports, or to duties on imports, or to warehousing; he shall give such directions to collectors and prescribe such rules and forms to be observed by them as may be necessary for the proper execution of the law; * * *."

The question whether a protest must be signed in order to be valid has never come directly before this court. In the case of Wells, Fargo & Co. *v.* United States (7 Ct. Cust. Appls. 346; T. D. 36903) the court, at one point in the decision, said: "Under subsection 14 of section 28 of the act of 1909 the protest must be signed by the owner, importer, consignee, or agent of the merchandise, and the Government claims this protest does not comply with said statute in that it was not signed by either or any of the prescribed parties, and therefore must be dismissed." However, the precise issue now in hand was not directly raised in the foregoing case, and the language above quoted was not intended as a decision of it, for the protest in the case bore a signature, and the question related only to the authority of the signer.

However, it is certain that for many years the rule obtained in practice that a signature was essential to the validity of a protest and that this was founded upon repeated rulings of the department and upon an unbroken line of decisions by the board. Apparently

none of these decisions was ever appealed from. It is also true that this practice was never modified by legislation, notwithstanding the fact that several general tariff revisions were enacted subsequently thereto.

Upon a consideration of the language of the act, the long prevalence of the rule, its reasonableness, and its consistent support by the authorities, we conclude that a protest absolutely without a signature of any kind would be invalid.

The next question which presents itself is whether the protest now in question actually bore a signature of any kind. An inspection of the protest discloses the fact that no name of any person whatsoever appears upon the face of the instrument. The importation is therein referred to by its entry number, the railroad transporting it, the date of the entry, the time of the liquidation, and the marks upon the shipment. But the protest does not contain within its four corners the name of either the owner, importer, consignee, or agent of the merchandise, or of any other person. Upon the back of the paper, however, at the place where filing marks or data are usually indorsed, appears the following inscription, viz, "Protest No. 1809. Filed Dec. 10/20. W. H. Allison, 67 West Fort St., Detroit, Mich. Entry No. 1826. Against classification fee paid Dec. 10th, 1920."

The question is suggested whether this indorsement should not be accepted as a sufficient signature to the instrument. In answer, however, to the suggestion it must be observed that the record does not disclose when or by whom the indorsement was placed upon the instrument, whether by the owner, importer, consignee, or agent of the merchandise, or by the collector or a clerk employed by him. In article 645, Customs Regulations 1915, it is provided that "Protests shall be filed with the collector, who will give them serial numbers and stamp or write thereon the dates of receipt. The name of the protestant, entry numbers, and issue must be indorsed on each protest. A permanent record of all protests shall be kept on Customs Form 4337." Since the foregoing requirements relate to the treatment of protests after they have been filed, it seems probable that the indorsements aforesaid were placed upon the protest after it left the hands of the protestant.

Moreover it is stated by the board in its decision that the importer in a letter written to them after the submission of the case, made the following statement upon this subject, to wit, "Through an error on my part I forgot to sign the protest, although I filed the protest and paid the fees on the 10th of December as per receipt herewith inclosed." In the same letter the board was asked to "request the collector to grant me (importer) permission to sign the copy that he has on file in his office." The board did not comply with this request, but nevertheless the case was set for further hearing at Detroit.

two months after the date of the letter, and although the protestant was represented by counsel at the hearing no claim was made that the protest had in fact been signed in any manner. Under the circumstances therefore it can not be assumed that the indorsement was upon the document when it was filed, and at any rate it is manifest that it was never placed there by anyone to serve as a signature to the protest. We conclude therefore that according to the present record the protest was absolutely without a signature when it was filed with the collector.

The third question is whether the defect thus found was effectually waived by the Government by force of the collector's action, or by submission of the case to the board at the trial without any objection by the Government upon this point.

It is plain that the collector made no objection to the form of the protest when it was filed with him, and furthermore when he forwarded it to the board he reported that "The requirements of paragraph N of Section III, act of October 3, 1913, have been complied with by the protestant. Protest was filed and fee paid within the statutory period." It is fair to assume that the failure to sign was a mere oversight upon the part of the importer, and that the defect was not noticed by the collector, nor was it discovered until the board came to consider the case for decision.

We feel assured that the action of the collector would have amounted to a waiver of the defect in question were the matter one relating to his individual interests only, but we are convinced that the collector when acting officially has no authority to waive a compliance by the importer with the requirements of the law. He can do this neither expressly nor impliedly.

The following quotation from the decision of Judge Coxe, in United States *v.* Schefer (71 Fed. 959), is in point:

The question in this cause arises upon the sufficiency of the protest. It is conceded upon the part of the importers that the protest is insufficient, under section 14 of the customs administrative act of June 10, 1890. They contend, however, that the collector is estopped from raising this question, for the reason that in making his return to the board he stated that the requirements of the law had been complied with by the importers. If any proposition of tariff law is clearly established, it is that a valid and timely protest is a condition precedent to a recovery of duties by the importer. I am inclined to think that this is a condition which neither the collector nor any other officer of the United States has power to waive.

In the case of Pine Lumber (18 Fed. Cases, No. 10523), Judge Nelson said in part:

The deputy collector had no power to waive the requirements of the law and allow the goods to enter the United States without a compliance with them. In this case, however, no such permission was given.

See Bradley Martin, jr., *v.* United States (3 Ct. Cust. Appls. 384; T. D. 32982); Kronfeld, Saunders & Co. *v.* United States (4 id. 60,

T. D. 33308); United States v. Saunders (6 id. 86, T. D. 35337); and United States v. Cone & Co. (10 id. 120, T. D. 38375).

We think that the same reasons and authorities which preclude the theory of a waiver by the collector have a like effect when applied to the submission of the case to the board by the Government, without objection to the form of the protest. No waiver or estoppel resulted in either instance.

We conclude therefore that the protest in question was fatally defective for want of a signature, and that the decision of the board dismissing it should be, and it is, *affirmed.*