UNITED STATES *v.* MONSANTO CHEMICAL WORKS (No. 3543)[1]

United States Court of Customs and Patent Appeals, April 12, 1933

*Charles D. Lawrence,* Assistant Attorney General (*John F. Kavanagh* and *Ralph Folks,* special attorneys, of counsel), for the United States.
*W. W. Schneider* for appellee.

[Oral argument February 8, 1933, by Mr. Folks and Mr. Lawrence; submitted on brief by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The United States has here appealed from the judgment of the United States Customs Court, First Division, one member dissenting, which "ordered, adjudged, and decreed that the papers be and the

---

[1] T. D. 46377.

same are hereby returned to the collector at the port of St. Louis without action by this court."

The proceeding in which the lower court rendered the said judgment appealed from was styled reappraisement No. 97662–A, in which reappraisement Associate Judge Kincheloe had rendered a judgment sustaining the entered value on orthocresol imported from Germany. The Government, under the authority of section 501, Tariff Act of 1922, attempted to have the judgment of Associate Judge Kincheloe reviewed by the court below, and there was filed in the case a document which reads as follows:

UNITED STATES CUSTOMS COURT, FIRST DIVISION

*United States, appellant,* v. *Monsanto Chemical Works, appellee*

Reappraisement No. 97662–A on orthocresol

APPLICATION for a review of the decision of Associate Judge KINCHELOE by a division of the United States Customs Court

Application is hereby made for a review of the decision and judgment rendered by Associate Judge KINCHELOE, dated September 14th, 1931, in reappraisement No. 97662–A, entry No. 152, on orthocresol imported from Germany.

Respectfully submitted,

—————— ——————,
*Assistant Attorney General.*

Dated New York, September 19, 1931.
To: The COLLECTOR OF CUSTOMS,
St. Louis, Mo.

W. W. SCHNEIDER, Esq.,
MONSANTO CHEMICAL WORKS,
St. Louis, Mo.

What purports to be a copy of said document is found with the papers before us. There is no dispute between the parties as to the wording and form of the petition or as to the matter found on the outside or outside cover thereof. It is stated in the Government's brief and in the dissenting opinion by Judge Brown that the outside of the document filed contained the following:

SIR: Please take notice that the within is a true copy of the original, duly filed in the office of the Clerk of the United States Customs Court on the 22 day of September, 1931.

Dated, New York, N. Y.
Respectfully,

CHARLES D. LAWRENCE,
*Assistant Attorney General,*
*Attorney for the United States.*

To W. W. SCHNEIDER,
*Attorney for importer.*

Original filed 9/22/31 G. S. with United States Customs Court.
Copy served on 9/22/31 G. S. importer's attorney by mail.
Copy served on 9/22/31 G. S. collector of customs by mail.

ORIGINAL

United States Customs Court, ——— Division

In the matter of THE UNITED STATES, Appellant, *v.* MONSANTO CHEMICAL WORKS, appellee. Reappt. No. 97662–A on orthocresol.
Application for review.

CHARLES D. LAWRENCE,
*Assistant Attorney General,*
*Attorney for the United States.*

Office and post office address: 201 Varick St., New York, N. Y.
(Indorsed) Filed Sept. 22, 1931, U. S. Customs Court, J. W. Dale, clerk.

Nothing appears on the opposite side of the document found with the papers, above quoted, but it appears that a majority of the court below, as well as the dissenting member, in deciding and discussing the case, were considering a document, on the outside of which was the printed matter heretofore referred to.

We find the following in the opinion of the court:

Upon the outside cover, under the title of the case and the name and official title of the Assistant Attorney General, appears the stamp of this court in these words: "Filed September 22, 1931, J. W. Dale, clerk."

It appears from the decision of the court below that the fact that the Assistant Attorney General had not signed the application for review remained unnoticed until in the argument of the case a member of the court called attention to this fact. No objection was made by anyone as to the sufficiency of the application, except as above indicated, until the court took it under consideration for decision. The majority of the court concluded that it presented a question of jurisdiction and, in an opinion by Judge McClelland, said:

The unsigned paper under discussion, although in the form of an application for review, can not be treated as even a defective application, which might, for a fatal defect, be dismissed. It is no more effective in invoking the jurisdiction of this court than a blank piece of paper would be.

The papers in the case are improperly before us, and the clerk of the court is directed to return them to the collector at the port of St. Louis without action by this court.

The Government filed a lengthy petition for rehearing, citing many authorities and discussing several different phases of the case, contending that the court had erred in not considering the application for review as a proper one, in refusing to hear the appeal, and in ordering the papers returned to the collector at the port of St. Louis without action by the court.

The importer, appellee herein, also filed a petition for rehearing, praying that the judgment of the court be modified or corrected with a view of having such action taken as would prevent the collector from interpreting the action of the court as being an approval of the appraised value rather than an approval of the reappraised value as

found by Judge Kincheloe. Both petitions for rehearing were denied. The appellee has filed no cross appeal here.

The Government in this appeal assigns error predicated upon the court's holding the application for review to be insufficient, and also assigns error upon the denial by the court below of appellant's motion for rehearing.

It is argued by the Government in this court that its petition for review should have been regarded as sufficient to entitle it to a review by the lower court on the merits of the decision of Judge Kincheloe.

Section 501 of the Tariff Act of 1922, which is applicable to the appraisement, reappraisement, and re-reappraisement, of the merchandise involved, is, in part, as follows:

> The decision of the general appraiser [now a single judge], after argument on the part of the interested parties if requested by them or by either of them, shall be final and conclusive upon all parties unless within ten days from the date of the filing of the decision with the collector *an application for its review shall be filed with or mailed to said board by the collector or other person authorized by the Secretary of the Treasury*, and a copy of such application mailed to the consignee, or his agent or attorney, or filed by the consignee, or his agent or attorney, with the collector, by whom the same shall be forthwith forwarded to the Board of General Appraisers. Every such application shall be assigned by the Board of. General Appraisers to a board of three general appraisers, who shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser, and, after argument on the part of the parties if requested by them or either of them, shall affirm, reverse, or modify the decision of the general appraiser or remand the case to the general appraiser for further proceedings, and shall state its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor. * * * (Italics ours.)

It is admitted in this case that by virtue of T. D. 41861, 50 Treas. Dec. 426, and Title 5, section 296, U. S. C., Charles D. Lawrence, on the date of the filing of the alleged petition for review had "charge of the interests of the Government in all matters of reappraisement" of the merchandise involved in the instant litigation, and was the proper party to represent the Government in that court and file a petition for review if he so desired. It is not even suggested in this case that anyone but Charles D. Lawrence, as Assistant Attorney General, had any authority to file or cause to be filed any such petition for review.

Many authorities have been cited, none of which are exactly in point, except in the application of the principles involved. We have found no case where facts substantially identical with those at bar were before any court.

The main question in the case is: Does the record show that the Assistant Attorney General, Charles D. Lawrence, filed or caused to be filed an application for review of the judgment of Judge Kincheloe?

We are constrained to agree with the conclusion of the court below that no such application was filed. No doubt such an application was intended, but to hold that such an application had been filed, under the circumstances at bar, might lead to difficulties and undesirable results, which should be avoided, if possible. The document on its face shows that it was incomplete; that the Assistant Attorney General had not performed the chief act necessary for the execution of the authority vested in him by the statute and the Treasury decision heretofore mentioned. The absence on the document of anything in the way of authentication we think is fatal to its validity. There is nothing on the back of the document, even if we were permitted to take cognizance of it, that stamps it as the act of Charles D. Lawrence, Assistant Attorney General of the United States. On the contrary, the record as a whole would indicate that the printed matter on the back or outside of the unsigned application for review is formal matter, and that it is not indicium of legal authenticity.

The Government has relied in this appeal very largely on *Ohl & Co.* v. *Smith Iron Works*, Nos. 228 and 229, 288 U. S. 170, decided by the Supreme Court of the United States on February 6, 1933. We do not think this decision supports the contention of the Government. On the contrary, we believe it points directly to the correctness of our conclusion herein. In the *Ohl & Co.* case, *supra*, a bill of exceptions signed by the attorneys was indorsed by the district judge as follows: "Allowed August 20, 1930, J. A. L., D. J." The name of the judge was James A. Lowell. The Circuit Court of Appeals held the bill of exceptions was not sufficiently authenticated, 57 F. (2d) 44. The applicable statute concerning the sufficiency of authentication of a bill of exceptions read:

A bill of exceptions allowed in any cause shall be deemed sufficiently authenticated if signed by the judge of the court in which the cause was tried  *  *  * without any seal of the court or judge annexed thereto.

Unlike the case at bar, the statute, in express terms, there required that the instrument must be "signed," and the question before the court was: Was sufficient authentication shown by the above-quoted indorsement containing the initials "J. A. L., D. J."? The Supreme Court in deciding the case said:

The statute does not prescribe the form of signature. The manifest purpose is authentication by the proper judge. In the absence of such authentication there is no bill of exceptions which the appellate court may consider. *Malony* v. *Adsit, supra; Metropolitan Railroad Co.* v. *District of Columbia*, 195 U. S. 322, 330; *McCuing* v. *Bovay*, 60 F. (2d) 375, 376; compare *Christy* v. *Pridgeon*, 4 Wall. 196, 201, 202. Appropriate disapproval of the practice of signing by initials such important documents as bills of exceptions, and insistence upon a method of signature more in keeping with the formal character of the proceeding, do not reach the question now presented. That question is not whether the signature is informal but whether there is a signature. If the attempted authentication by

Judge Lowell be deemed to be merely informal or irregular, but not a nullity, the defect could be disregarded or cured by amendment. R. S. §954, 28 U. S. C. 777. See, also, 28 U. S. C. 391. Thus, in *Idaho and Oregon Land Company* v. *Bradbury*, 132 U. S. 509, the clerk of the court below in attempting to authenticate the record had appended the seal of the court but had failed to comply with the rule of this Court in affixing his signature. The court said (p. 513): "The question presented is not one of no authentication, but of irregular or imperfect authentication; not of jurisdiction, but of practice. It is therefore within the discretion of this court to allow the defect to be supplied." And as it appeared to be then "too late to take a new appeal or writ of error," the Court permitted the record to be withdrawn "for the purpose of having the certificate of authentication perfected by adding the signature of the clerk." A defect or inaccuracy in mere matters of form can be corrected notwithstanding the end of the term. *United States* v. *Mayer*, 235 U. S. 55, 67.

    \*       \*       \*       \*       \*       \*       \*

The statute contains no indication that the word "sign" is used in other than the ordinary sense. The statute gives neither definition nor qualification. Signature by initials has been held to be sufficient under the Statute of Frauds and the Statute of Wills and in other transactions. It has been held in some States that a different rule obtains in the case of the official signature of certain judicial officers, but the Congress has not established such a rule for the judges of the federal courts. Nor, in the absence of special statutory requirement, is there a uniform custom in relation to official signatures. It may be assumed that a requirement of the officer's signature, without more, means that he shall write his name or his distinctive appellation, but the question remains as to what writing of that character is to be deemed sufficient for the purpose of authenticating his official act. There is no rule that he shall adhere to the precise form of his name as it appears in his commission. The full name of the officer may or may not be used. Not infrequently Christian names are omitted, in part or altogether, or are abbreviated or indicated by initials. In some of the most important communications on behalf of the Federal Government, only the surname of the officer is used. When an officer authenticates his official act by affixing his initials he does not entirely omit to use his name; he simply abbreviates it, he uses a combination of letters which are part of it. Undoubtedly that method is informal, but we think that it is clearly a method of "signing." It can not be said in such a case that he has utterly failed to "sign," so that his authentication of his official act, in the absence of further statutory requirement, is to be regarded as absolutely void.

While the statute authorizing the filing of applications for review, applicable to the facts at bar, does not expressly require signature, it would seem to require that such an application be filed as would show upon its face that it was the application of the party in interest filed by the properly constituted authority. Unlike the *Ohl & Co.* case, *supra*, we are not called upon here to determine whether initialing or some other form of execution amounts to a *signing*, since there is nothing on the document which can be regarded as evidence of authenticity of execution. On the contrary, there is a total absence of any evidence of execution by the authorized authority and we think there is no proper evidence that the paper filed was the result of the act of the proper authority.

The Government has also cited numerous other authorities which are so little in point, on this phase of the case, as to require but little discussion.

The Government has also earnestly contended that by virtue of section 269 of the judicial code, as amended (sec. 391, title 28, U. S. C.), the lower court erred in not considering the case upon its merits; that the absence of the Assistant Attorney General's signature under said statute should be regarded as a technical error or defect. The said section reads as follows:

All United States courts shall have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law. On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to *technical errors, defects*, or exceptions which do not affect the substantial rights of the parties. (Italics ours.)

Statutes of this character have been frequently interpreted by the courts, and we have examined with care the numerous authorities cited by the Government on this phase of the case. We have found no case on all fours with the case at bar. It is sufficient to say that we know of no case where the omission from the face of a document, of the importance and nature of the one at bar, of all indicia of origin or authorship, was regarded by the court as constituting the *technical error* or *defect* mentioned in the statute. If the document at bar had been sufficiently authenticated, or probably if it had been imperfectly authenticated, and if the above statute has any application at all to the situation which confronted the court below, defects and errors contained therein might not render it invalid, and amendment might be made. As to whether the section referred to does apply under other circumstances to the action of the United States Customs Court in reviewing the action of a single appraising judge, we are not called upon to decide and do not decide. We hold only that it does not apply under the circumstances at bar.

We conclude that since there was no application for review filed, the court had no jurisdiction to review Judge Kincheloe's decision. In the light of this conclusion it at once becomes apparent that section 269, *supra*, has no application here. For the same reason as above given, we do not think that the jeofails statute relating to "Defects of Form; Amendments," section 954 of the Revised Statutes (sec. 777, title 28, U. S. C.), application of which was made by us in *United States* v. *Bracher & Co. et al.*, 13 Ct. Cust. Appls. 432, T. D. 41344, has any application in the cause here being considered.

The appellee and the court below rely very largely, as supporting their respective positions, on the case of *Allison* v. *United States*, 11 Ct. Cust. Appls. 297, T. D. 39126. While the facts in that case differ somewhat from the facts now under consideration, we think

our decision in the *Allison* case is largely controlling of our decision in the case at bar. In that case the trial court (then the Board of General Appraisers) held the importer's protest to be null and void, and dismissed the same because it was "wholly unsigned by anyone." The statute required that the importer "shall within 30 days after liquidation, if dissatisfied with such decision, file a protest or protests in writing with the collector, setting forth [etc.]." The statute required that the protest should be filed by the importer with the collector and should be in writing. This court held that "a protest absolutely without a signature of any kind would be invalid." The court said:

* * * But the protest does not contain within its four corners the name of either the owner, importer, consignee, or agent of the merchandise, or of any other person. Upon the back of the paper, however, at the place where filing marks or data are usually indorsed, appears the following inscription, viz, "Protest No. 1809. Filed Dec. 10/20. W. H. Allison, 67 West Fort St., Detroit, Mich. Entry No. 1826. Against classification fee paid Dec. 10th, 1920."

The question is suggested whether this indorsement should not be accepted as a sufficient signature to the instrument. In answer, however, to the suggestion it must be observed that the record does not disclose when or by whom the indorsement was placed upon the instrument, whether by the owner, importer, consignee, or agent of the merchandise, or by the collector or a clerk employed by him. * * *

In some respects the case may be distinguished from the case at bar, but it seems that if, under the circumstances of the *Allison* case, the importer must sign a protest to make it valid, the Government is equally required to sign its application for review. The following authority is regarded as pertinent: *United States* v. *Kraemer & Co.*, 17 C. C. P. A. (Customs) 448, T. D. 43879.

The Government has cited the case of *Larzelere Co.* v. *United States*, 5 Ct. Cust. Appls. 510, T. D. 35154, where the court passed upon what action was required by the collector to perfect an appeal to reappraisement. The court held that all the statute required was that should he deem the appraisement of any imported merchandise too low, he should submit the invoice and all the papers appertaining thereto to the Board of General Appraisers. There was no statute requiring the *filing* of anything and the authority is not in point.

While we agree with the decision of the court below that there was no petition for review filed, we think the proper order in the case for it to have made was that the papers be returned to the single appraising judge who should take such further proceedings as were warranted in law, and, as we view it, the judgment of the court below brings about the same result as if this step had been taken. Under rule 29 of the United States Customs Court, had the papers been returned by the court to the single appraising judge, they would have been forwarded to the collector without any further action whatever on the part of the single appraising judge. The judgment order entered by direc-

tion of the single appraising judge presumably accompanied the papers and became the collector's mandate for reliquidation.

While the lower court, we think, properly held that there was no appeal pending before it and, therefore, no appeal to dismiss, its action in the instant case brought about a result no different from that in the *Allison* case, *supra*, where the appeal was dismissed by the lower court and its judgment affirmed by this court. The judgment of the lower court is, therefore, *affirmed*.

### DISSENTING OPINION

Graham, Judge: I am satisfied with the conclusion reached by the majority that the paper filed, claimed to be by the Assistant Attorney General, was not a sufficient application for review of the decision of Judge Kincheloe, and that the court below should have so held. There is, however, one matter in which I think the majority opinion does not meet my views.

I am convinced that the affirmance of the judgment of the court below is in error for this reason: The court had jurisdiction of the matter, for the purpose of determining whether the paper filed by the Assistant Attorney General was a sufficient application for review, and consequently whether an appeal had been perfected. It had a right, and it was the duty of the court, to determine that matter. It held that it did not have jurisdiction, because no application for review had been filed, and thereupon ordered "that the papers be, and the same are hereby returned to the collector at the port of St. Louis, without action by this court." This, in my opinion, was not a proper judgment order. The case had come to the court from the court of Judge Kincheloe and should have gone back to the collector by the same method. In other words, the papers should have been transmitted to the collector by Judge Kincheloe's court.

The judgment of the United States Customs Court should have been that the appeal was dismissed. This is in harmony with the practice in similar cases. *Postum Cereal Co.* v. *California Fig Nut Co.*, 272 U. S. 693, 701; *Allison* v. *United States*, 11 Ct. Cust. Appls. 297, T. D. 39126.

In my opinion the judgment below should be reversed and the cause remanded for the rendition of a proper order of dismissal.