THE MANUFACTURERS AND PRODUCERS OF GOAT, SHEEP AND CABRETTA LEATHERS INCLUDED WITHIN THE MEMBERSHIP OF THE TANNERS' COUNCIL OF AMERICA v. UNITED STATES, AMERICAN EXPRESS CO., PELLIS, INC., AND LEATHER TRADING CORP., PARTIES IN INTEREST (No. 3716)[1]

---

[1] T. D. 46996.

United States Court of Customs and Patent Appeals, March 26, 1934

*De Vries, Crawford & McCook* (*Marion De Vries* and *Jesse P. Crawford* of counsel) for appellants.

*Sharretts & Hillis* (*Benjamin H. Stern* and *Edward P. Sharretts* of counsel) for Pellis, Inc., and Leather Trading Corp.

*Charles D. Lawrence*, Assistant Attorney General, for the United States.

[Oral argument February 16, 1934, by Mr. Marion De Vries and Mr. Edward P. Sharretts]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT,. Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court dismissing certain protests purporting to have been made by and in behalf of American producers under the provisions of section 516 (b) of the Tariff Act of 1930.

By stipulation only one of the protests was printed in the record, which protest, so far as is here pertinent, reads as follows:

Protest 591567–G/30685

WASHINGTON, D.C., *July 11, 1932.*
COLLECTOR OF CUSTOMS, *New York, N.Y.*

AMERICAN PRODUCERS' PROTEST

SIR: The Manufacturers and Producers of Goat, Sheep, and Cabretta. Leathers, Included Within the Membership of The Tanners' Council of America, through and by their attorneys, De Vries, Crawford & McCook, Southern Building, Washington, D.C., having first complied with all the provisions precedent of section 516 (b) of the Tariff Act of 1930 relating to protests by American manufacturers, producers, and wholesalers of domestic merchandise, like or similar to the imported merchandise hereinafter referred to, hereby give notice of dissatisfaction with and protest against, as evidenced by this written protest filed in triplicate original, the classification and rate of duty imposed by you upon an importation of kid leather by the American Express Co. for Harry Lutz,. Boston, Mass., consignee, * * *.

\*    \*    \*    \*    \*    \*    \*

THE MANUFACTURERS & PRODUCERS OF GOAT, SHEEP,
AND CABRETTA LEATHERS INCLUDED WITHIN THE
MEMBERSHIP OF THE TANNERS' COUNCIL OF AMERICA,
By DE VRIES, CRAWFORD & McCOOK, *Attorneys,*
By JESSE P. CRAWFORD,
*Southern Building, Washington, D.C.*

The appellees, American Express Co., Pellis, Inc., and Leather Trading Corp., are parties in interest, appearing herein pursuant to the provisions of said section 516.

Upon the trial in the Customs Court protests 591567–G/30685,. 576406–G/18981, 580367–G/19996, 591568–G/30687, and 600664– G/30427 were consolidated for the purpose of the trial, and all are included in the judgment rendered by the trial court herein.

Upon the opening of the trial in the court below, counsel for the appellees who are parties in interest herein moved to dismiss the protests upon the ground that the names of the protestants are not. disclosed in the protests.

This motion the trial court took under advisement and, after the introduction of certain testimony and documentary evidence, the cause was submitted.

The trial court reached a unanimous conclusion that the protests should be dismissed. Judge McClelland wrote the principal opinion, and Judges Sullivan and Brown each wrote a concurring opinion.

Section 516 of the Tariff Act of 1930, so far as it is here pertinent, reads as follows:

SEC. 516. APPEAL OR PROTEST BY AMERICAN PRODUCERS.

\* \* \* \* \* \* \*

(b) CLASSIFICATION.—The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of and the rate of duty, if any, imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him. If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being assessed, he may file a complaint with the Secretary of the Treasury setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief. If the Secretary decides that the classification of or rate of duty assessed upon the merchandise is not correct, he shall notify the collectors as to the proper classification and rate of duty and shall so inform such manufacturer, producer, or wholesaler, and such rate of duty shall be assessed upon all such merchandise imported or withdrawn from warehouse after thirty days after the date of such notice to the collectors. If the Secretary decides that the classification and rate of duty are correct, he shall so inform such manufacturer, producer, or wholesaler, and shall, under such regulations as he may prescribe, cause publication to be made of his decision, together with notice that the classification of and the rate of duty on all such merchandise imported or withdrawn from warehouse after the expiration of thirty days after such publication will be subject to the decision of the United States Customs Court in the event that a protest is filed under the provisions of this subdivision. If dissatisfied with the decision of the Secretary, such manufacturer, producer, or wholesaler may file with him a notice that he desires to protest the classification or the rate of duty imposed upon the merchandise, and upon receipt of such notice the Secretary shall furnish him with such information as to the entries and consignees of such merchandise, entered after the expiration of thirty days after the publication of the decision of the Secretary, at the port of entry designated by the manufacturer, producer, or wholesaler in his notice of desire to protest, as will enable him to protest the classification of or the rate of duty imposed upon such merchandise when liquidated at such port. The Secretary shall direct the collector at such port to notify such manufacturer, producer, or wholesaler immediately upon the liquidation of the first of such entries to be liquidated. Such manufacturer, producer, or wholesaler may file, within thirty days after the date of such liquidation, with the collector of such port a protest in writing setting forth a description of the merchandise and the classification and the rate of duty he believes proper. Upon the filing of any such protest the collector shall notify the Secretary of the Treasury who shall order the suspension, pending the decision of the United States Customs Court upon such protest, of the liquidation, at all ports, of all unliquidated entries of such merchandise imported or withdrawn from warehouse after the expiration of thirty days after the publication of the Secretary's decision. All entries of such merchandise so imported or withdrawn shall be liquidated, or if already liquidated, shall, if necessary, be reliquidated, in conformity with such decision of the United States Customs Court. If, upon appeal to the Court of Customs and Patent Appeals, the decision of the United States Customs Court is reversed, the classification of the merchandise and the rate of duty imposed thereon shall

be in accordance with the decision of the Court of Customs and Patent Appeals, and any necessary reliquidation shall be made. The provisions of this subdivision shall apply only in the case of complaints filed after the effective date of this Act.

(c) HEARING AND DETERMINATION.—A copy of every appeal and every protest filed by an American manufacturer, producer, or wholesaler under the provisions of this section shall be mailed by the collector to the consignee or his agent within five days after the filing thereof, and such consignee or his agent shall have the right to appear and to be heard as a party in interest before the United States Customs Court. The collector shall transmit the entry and all papers and exhibits accompanying or connected therewith to the United States Customs Court for due assignment and determination of the proper value or of the proper classification and rate of duty. The decision of the United States Customs Court upon any such appeal or protest shall be final and conclusive upon all parties unless an appeal is taken by either party to the Court of Customs and Patent Appeals, as provided in sections 501 and 515 of this Act.

In the opinion of Judge McClelland it is stated as follows:

From examination of the protests it is at once apparent that it is impossible to determine from the subscriptions thereto who the protestants are. The term "The Manufacturers and Producers of Goat, Sheep, and Cabretta Leathers" may mean a collection of either individuals, partnerships, or corporations, or a mixture of all three, and counsel for this "group" frankly admit that the subscriptions to the protests were deliberately so phrased to prevent the identity of any of these manufacturers or producers, said to be included within the membership of the Tanners' Council of America, from becoming known.

Counsel for the importers in their brief say that the question raised by this motion is whether "actual parties in interest may conceal their identity and relieve themselves of responsibility either individually or collectively by subscribing the protest with a declaration which merely describes a group, which, as a group, has no legal existence either as a corporation, copartnership, or other legal entity", adding that the Tanners' Council of America is an incorporated society, the articles of incorporation of which are in evidence and show that it is neither a manufacturer, producer, nor wholesaler. There is not a scintilla of evidence in the record that the Tanners' Council of America manufactures, produces, or sells at wholesale any such merchandise as that the classification of which is protested against.

That corporation or the nature of its business are not, however, involved in this suit, or even in this motion. We are concerned here with the sole question of whether a protest hereinbefore described is sufficient to invoke the jurisdiction of this court under the provisions of section 516 (b), supra. We are convinced that it is not.

In the case of *Allison* v. *United States*, 11 Ct. Cust. Appls. 297, T.D. 39126, this court held that an unsigned protest, treated by the collector as valid and forwarded by him to the Board of United States General Appraisers (now the United States Customs Court), was invalid. In the opinion in that case the court cited with approval the *Adams* case, T.D. 14233, decided by the Board of General Appraisers, and quoted at length from the opinion therein. The last paragraph so quoted from the *Adams* case reads as follows:

It was not the duty of the collector, nor do we conceive it to be our duty, to go outside of the unsigned protest to ascertain by extrinsic evidence who is the respon-

sible protestant.· The uniform practice has long been to disregard protests that are unsigned by anyone. The requirement of a signature is a reasonable guaranty against the introduction in protests of impertinent matter and against pragmatism on the part of unauthorized agents.

In the case at bar there is no party in interest disclosed in the protest. The only disclosure of this kind contained in the protest is that the firm of De Vries, Crawford & McCook, the attorneys in the case, signed the protest in behalf of a group of "Manufacturers & Producers of Goat, Sheep, and Cabretta Leathers Included Within The Membership Of The Tanners' Council Of America." It appears from the record that said Tanners' Council of America is a corporation organized under the laws of the District of Columbia. There is nothing in the certificate of incorporation, which was received in evidence, requiring that the names of the members of such corporation should be open to the public.

It seems to us that the effect of the subscription to the protest is that it is signed by the firm of De Vries, Crawford & McCook upon behalf of undisclosed principals.

A protest in customs jurisprudence is, when transmitted to the United States Customs Court, the beginning of an action against the United States, and constitutes the complainant's pleading. *United States* v. *McCoy*, 5 Ct. Cust. Appls. 264, T.D. 34445.

Were it not for the very earnest insistence of counsel for appellants that the protests at bar contain a sufficient disclosure of parties, we should content ourselves with affirming the judgment of the trial court upon the general rule that, unless otherwise permitted by statute, parties must be designated by name and not by a mere description. 47 Corpus Juris 172, and cases there cited.

Counsel for appellants, however, earnestly contend that it should not be held necessary to disclose in the protests the names of the real parties in interest for the reason that the only *judgment* that could be rendered against the protestants is that the protests be dismissed or overruled.

In this connection it may be said that section 517 of the Tariff Act of 1930 provides that in cases where the Customs Court shall find that a protest is frivolous a penalty of not less than $5 nor more than $250 shall be assessed against the person filing such protest. Said section 517 reads in part as follows:

SEC. 517. FRIVOLOUS PROTEST OR APPEAL.

The United States Customs Court shall, upon motion of counsel for the Government, and may, upon its own motion, decide whether any appeal for reappraisement or protest filed under the provisions of section 501, 514, 515, or 516 of this Act is frivolous, and, if said court shall decide that such appeal or protest is frivolous, a penalty of not less than $5 nor more than $250 shall be assessed against the person filing such appeal or protest: * * *

While, of course, such a proceeding would be very unusual, and the appeal before us is not of that character, Congress clearly contemplated that frivolous protests and appeals might be taken to the Customs Court, and, by penalizing the party filing such protests or bringing such appeals, sought to deter proceedings frivolous in their nature. If appellants' counsel are right in their contention that the names of the real parties in interest filing a protest under said section 516 need not be disclosed in the protest, we do not see how said section 517 could, in a proper case, be enforced where the name of no protestant is disclosed. While it may be said that in such cases the Customs Court could institute an inquiry to determine the names of the real parties in interest against whom the penalty should be assessed, we think that Congress clearly intended that the penalty should be assessed against protestants whose names are disclosed in the protests, and we do not think that Congress contemplated that the penalty should be assessed against the attorneys for protestants, or that an inquiry need be undertaken to determine the real parties in interest.

Another reason why there should be a disclosure in the protest of the names of the protestants is that the right of protest under section 516, *supra*, is limited to an American manufacturer, producer, or wholesaler who believes that the proper rate of duty is not being assessed upon imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him. That is to say, the right of protest is afforded to American manufacturers, producers, or wholesalers only in special cases. Surely the Government and the importer, as a party in interest, should have the right to show, if such be the fact, that the protestant is not entitled to the benefit of the provisions of section 516 because he is not an American manufacturer, producer, or wholesaler of merchandise of the class or kind of imported merchandise described in the protest.

Counsel for appellants offered to prove upon the trial the names of the protestants who were manufacturers of goat, sheep, and cabretta leathers, included within the membership of the Tanners' Council of America. Objection to such offer was sustained by the trial court, and properly so. After the trial had begun, if such names had been proved, appellees would have had no proper opportunity to show that such persons, so disclosed upon the trial, were not entitled to make the protest provided for in section 516.

Therefore, there is abundant reason why the names of protestants under section 516 should be disclosed in the protest.

Appellants' counsel call our attention to section 747 of the Revised Statutes, Judicial Code, sec. 394 U.S.C.A., which provides:

In all the courts of the United States the parties may plead and manage their own causes personally, or by the assistance of such counsel or attorneys at law as,

by the rules of the said courts, respectively, are permitted to manage and conduct causes therein.

We hardly think that counsel would contend that this section warrants the bringing of an action by an undisclosed principal. It would certainly be a novel theory if it should be contended that, by virtue of this section, the names of parties plaintiff and defendant need not be disclosed, a theory which finds no warrant anywhere, so far as we can find.

Appellants' counsel cite the case of *Wells, Fargo & Co.* v. *United States*, 7 Ct. Cust. Appls. 346, T.D. 36903, where a protest was held valid although made only by the agent of the real party in interest. It is sufficient to say, with respect to that case, that the name of the protestant was contained in the protest, and the statute under which the protest was filed expressly permitted the owner, importer, consignee, or *agent* of imported merchandise to protest the decision of the collector.

In the case at bar De Vries, Crawford & McCook are not the protestants, and it is not contended by them that they are parties to this suit. Throughout the trial, and here, they appear only as attorneys for their undisclosed principals. But even if, as in the *Wells, Fargo & Co.* case, *supra*, they had appeared as parties by virtue of being the agents of undisclosed principals, we do not think that a protest of that character could be sustained under section 516 of the Tariff Act of 1930. Section 514 provides that an importer, consignee, or agent of the person paying a charge or exaction may file a protest. Section 516 contains no provision for filing a protest in the name of an agent, and while an American manufacturer, producer, or wholesaler may, of course, be represented by attorneys, as in all other cases, as provided by section 747, Revised Statutes, we think section 516 requires that the name of the American manufacturer, producer, or wholesaler be disclosed in the protest; and while, of course, attorneys may act for him, the suit must be carried on in the name of such American manufacturer, producer, or wholesaler.

Appellants' counsel cite a number of cases where it has been held that voluntary associations have the legal right to designate members or persons to bring actions in their behalf. We have examined all of the cases cited and find none in which there is not disclosed the name of a plaintiff or complainant who is a party in interest.

Appellants' counsel make further contentions that the appellees, parties in interest, being intervenors, had no right to make the motion to dismiss the protests, and also that the objection to the form of the protests came too late. It is sufficient to say with regard to these contentions that, the protests being invalid, neither waiver nor estoppel may be applied to any of the appellees.

In the case of *Allison* v. *United States*, *supra*, the question of the sufficiency of the protest was not raised by either of the parties upon

the trial, and, after testimony had been taken and the case submitted to the Customs Court, that court upon its own motion dismissed the protest upon the ground that it was null and void. This court affirmed such action and held that no officer of the Government could waive the question of the sufficiency of the protest there involved.

We come to a like conclusion here. It is not necessary, with respect to the question before us, to consider the status of said appellees, parties in interest, as bearing upon their right to move to dismiss the protests, for the reason that, as in the *Allison* case, *supra*, the trial court could have dismissed the protests here involved of its own motion upon the ground that they were null and void for want of the disclosure of the parties bringing the action.

Appellants' counsel contend that the protestants are a definite legal entity. A legal entity is a *person* in the eye of the law. 20 Corpus Juris 1273; *Gastonia Cotton Mfg. Co.* v. *W. L. Wells Co.*, 128 Fed. 369.

It does not appear that the "Manufacturers and Producers of Goat, Sheep and Cabretta Leathers Included within the Membership of the Tanners' Council of America" has ever been incorporated under that name, or that it has any legal existence as such, nor do appellants' counsel so contend.

Upon the record before us, it is clear that said group could not be sued under that title, and that it is not a person in the eye of the law.

Furthermore, we are of the opinion that said section 516 does not accord to an association of manufacturers constituting a legal entity the right of protest. It was so held by the Customs Court in the case of *Porcelain Enamel Institute* v. *United States*, T.D. 46713. In that case the court in construing said section 516 said:

* * * That section, however, limits those entitled to file a protest thereunder to "*any manufacturer, producer, or wholesaler*", of merchandise similar to the imported merchandise in issue, and such a statute must be strictly construed. If the Congress intended to accord the same right to an association of manufacturers it would undoubtedly have employed suitable language to effectuate that purpose, as it has in discriminating in favor of certain classes of societies or associations in other parts of the present tariff law. * * *

We agree with this construction of section 516 (b). We do not, however, mean to imply that American manufacturers entitled to protest under section 516 may not join a protest if their names are disclosed therein. That question is not here before us.

Appellants' counsel further make the point that the collector in his report to the Customs Court stated:

This protest was lodged by an American manufacturer, producer, or wholesaler under the provisions of section 516, Act of 1930, was received within the statutory time and a copy thereof was mailed to the consignee or his agent within five days after the filing thereof, to accord with the requirements of said section.

Appellants' counsel contend that this is a finding of fact by the collector that protestants had complied with said section 516, and that such finding has not been controverted in this case.

It is sufficient to say that it was not within the province of the collector to determine whether the protests were sufficient to confer jurisdiction upon the Customs Court with respect to the matters complained of in the protests.

We hold that, for the reasons stated, all of said protests are null and void, and the Customs Court properly entered judgment dismissing them.

The judgment of the United States Customs Court is *affirmed*.