## WELLS, FARGO & Co. *v.* UNITED STATES (No. 1685).[1]

1. PLEADING—PROTEST, ALTERATION OF.

A protest showing that "626" had been typewritten as the number of the paragraph claimed under, but had been erased and "555" inserted with lead pencil in lieu thereof, is, in the absence of any claim that it had been tampered with, sufficient to claim under paragraph 555.

2. EVIDENCE—AGENCY, PROOF OF.

The existence of a parol agency may be shown by the testimony of the agent.

3. CONSTRUCTION, SUBSECTION 14 OF SECTION 28, TARIFF ACT OF 1909—"AGENT OF SUCH MERCHANDISE."

Generally speaking, agency when not implied by law, arises from a contractual relation, express or implied, between one party called the principal and the other the agent, and inanimate objects like the merchandise in this case are obviously without ability to create agents, nor can the statute be so interpreted. A protest signed by the agent of the owner and importer in his own name only complies with the provision of subsection 14 of section 28, tariff act of 1909, that the protest must be made by the "owner, importer, consignee, or agent of such merchandise."

4. RES ADJUDICATA.

Showing that the merchandise in this case is identical with that in another, without incorporating in this case the record of the other, and without introducing in this case such evidence as was introduced in the other, does not support a claim that the holding in the other case is *res adjudicata* of the issue in this one.

5. EVIDENCE—JUDICIAL NOTICE.

Opals, no samples being submitted, were described by the evidence as having one surface cut and polished. The court can not judicially know that they are

---

"rough or uncut, and not advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process" (paragraph 555, tariff act of 1909). The board's decision sustaining the collector's classification of them under paragraph 449 ("other precious stones and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry") must be affirmed.

## United States Court of Customs Appeals, December 21, 1916.

APPEAL from Board of United States General Appraisers, Abstract 38869.

[Affirmed.]

*McLaughlin, Russell, Coe & Sprague* and *Edward P. Sharretts* for appellants.
*Bert Hanson,* Assistant Attorney General (*John J. Mulvaney,* special attorney, of counsel), for the United States.

[Oral argument October 17, 1916, by Mr. Sharretts and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The importation in this case was made at the port of New York and while the tariff act of August 5, 1909, was in force. The first question made upon the record is that the protest is deficient in that it does not state under what paragraph the claim for free entry is made.

Before the Board of General Appraisers the United States moved to dismiss the protest upon the above ground and the board sustained the motion, saying in substance that a close scrutiny of the protest paper showed that the figures "626" were typewritten after the word "paragraph" in that part of the protest pointing out the statute under which free entry was claimed; that these typewritten figures had been erased and figures resembling "555" in very faint lead-pencil writing substituted therefor; that it was unable from an inspection to say whether this substitution of numbers was intended or not; that paragraph 626 was not applicable to the merchandise in question and therefore if it was intended to be relied on the protest would be overruled; that if paragraph 555 was the one invoked, the claim thereunder appeared to have been an afterthought and written in and the original paragraph number erased after the protest was filed, in which event it would appear that the protest had been tampered with, was not the protest filed, and was therefore invalid.

Justice to all parties requires us to say that it is not claimed here that the protest has been tampered with in any way, and we discover nothing whatever that so indicates.

We dispose of this first question by saying that a careful inspection of the protest satisfies us that the paragraph inserted therein and claimed applicable is free-entry paragraph 555, which reads:

Diamonds and other precious stones, rough or uncut, and not advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process, including glaziers' and engravers' diamonds not set.

The board, having sustained the motion to dismiss for the reasons above stated, gave no consideration to the other issues in the case which are here for decision and argued by counsel. The first of these is that protest was not made by the owner, importer, consignee, or agent of the merchandise. The protest is signed "Wells, Fargo & Co.", by McLaughlin, Russell, Coe & Sprague, attorneys. Under subsection 14 of section 28 of the act of 1909 the protest must be signed by the owner, importer, consignee, or agent of the merchandise, and the Government claims this protest does not comply with said statute in that it was not signed by either or any of the prescribed parties, and therefore must be dismissed.

The entry papers are not before us. From the undisputed testimony of one of the appellants' witnesses it appears that the imported merchandise was owned by Mr. Wollaston; that the witness, a representative of Wells, Fargo & Co., went with him to the customhouse in New York, where a declaration of ownership was made and bond given for the production of the consular invoice; that thereupon the claim of free entry was denied by the customs officers and payment of duty insisted upon. The witness closed this part of his testimony by saying, "We then filed the protest at his (meaning Mr. Wollaston's) request."

He further said that Wells, Fargo & Co. were customhouse brokers for Mr. Wollaston and acted for him in filing the protest; that at its date he was pretty sure they had written authority from him to file it, but after search they were unable to find it; and that Mr. Wollaston left the city soon after the entry was made, since which time the witness had not seen him.

The Government insists that inasmuch as Wollaston was the owner of the goods this evidence does not establish that Wells, Fargo & Co. had any authority to deal with the merchandise or to file the protest. The appellants argue that the undisputed evidence requires and warrants the conclusion that the protest was filed at the request of the owner by Wells, Fargo & Co. and establishes the right of that company to act as the agent of the owner and importer of the merchandise in this proceeding. The Government, replying to this, asserts that if that conclusion be assumed as proven, nevertheless the language of subsection 14 is that the protest must be signed by the owner, importer, consignee, or agent of the merchandise, and that although it may be conceded that Wells, Fargo & Co. is the agent of the owner and importer, it is not the agent of the merchandise and cites in this connection the case of Abegg et al. v. United States (71 Fed., 960).

The Government claims this case, which involves the interpretation of section 14 of the customs administrative act of 1890, the relevant language of which is identical with that under consideration, is

authority for the proposition that there is a distinction between the agency of the merchandise and the agency of the importer and therefore that although the latter may be established in the case at bar, the former is not, and hence the protest is defective.

The opinion in the case of Abegg & Rusch *v*. United States, a case at circuit, when carefully considered, does not warrant the conclusion that the learned judge really meant to hold that the "agent of the merchandise," as that term is used in the statute, was anything other than the agent of the owner thereof. It is true that in the opinion it is said that the statute "permits a protest to be made by the importer, consignee, or agent of the merchandise; not agent of the importer or consignee but of the merchandise itself." So far, this would indicate that the court had in mind that the agent of the importer or consignee could not be the agent of the merchandise. The opinion, however, proceeds to state that—

Robertson was the owner. Robertson has not been produced as a witness, nor is he a party in any way to this litigation. * * * If Robertson had been produced as a witness and had testified that he gave these men the authority to make this protest, or if there were a written authorization filed in the customhouse to that effect, it would be a very different matter; but Robertson is an entire stranger to this controversy, and it seems to me that the evidence fails to establish such agency as is contemplated by section 14.

It is obvious that the court did not mean to hold that an agent of the merchandise in the contemplation of the statute might not derive his authority from the owner, neither at present do we see any reason why such agency may not be created by the importer or consignee whether owner or not. Agency, as far as relates to the facts in this case, presupposes the existence of a party having such relation to the merchandise as to be clothed with authority regarding it. Generally speaking, agency when not implied by law arises from a contractual relation, express or implied, between one party called the principal and the other the agent, and inanimate objects like the merchandise in this case are obviously without ability to create agents, nor can the statute be so interpreted. Neither do we think the court meant to say that an agency created by the owner can be shown only by his testimony. Such a conclusion is contrary to the settled law as to proof of the creation of any agency by parol, for an agency of this class, it has often been adjudicated, may be established by the testimony of the agent himself. Livingston *et al*. *v*. Swanwick (2 U. S., 2 Dall., 300; 31 Cyc., 1651 and cases cited).

The record before us, while not as satisfactory in that respect as might be desired, we think, in view of the testimony above set forth, sufficiently establishes that the appellants here are, for the purposes of this case, the agents of the owner. In this connection we do not consider an exhibit purporting to be a copy of a written authority

from the owner to the appellants to receive a refund of duties in this case nor the statement in writing made in connection therewith that he had employed the appellants to act for him and in his stead as agents to clear the goods through the customhouse or to make protest in his behalf, because this purported copy, although in the files, does not come there in a manner that gives it probative force and also because the record shows that what is probably this document, which is therein characterized as an *ex parte* affidavit, although received, was marked for identification only under the objection of the Government and that decision as to its admissibility in evidence by the board was reserved. We are not unmindful that in G. A. 1069 (T. D. 12255), G. A. 3677 (T. D. 17629), and G. A. 7440 (T. D. 33240), the Board of General Appraisers held in view of the circumstances of each case and in some instances upon the authority of Abegg & Rusch *v.* United States, that the protests could not be sustained, but in each case, as we understand the same, there is no evidence whatever that the protestant was the owner, importer, or consignee of the merchandise or had been authorized by any party whatsoever to file the protest.

We do not think the last above-mentioned cases are at all determinative of this issue. It is undoubtedly true that viewed from a strictly legal standpoint, the better practice would have been for the appellants in the case at bar to have signed this protest in Wollaston's name by themselves as agents or in their own names as agents for Wollaston, but we think a protest signed by the name of the agent alone, with no qualifying words, when upon hearing the agency in fact is proven, is a compliance with the law, and is sufficient for the purposes of the statute now under consideration. This conclusion seems to be supported by authority. In Mason *v.* Kane (Fed. Cas., No. 9241), the imported merchandise was owned by nonresident aliens and consigned to merchants in Baltimore, who entered the same, paid the exacted duties and filed protests in their own names. The remedy at that time for unlawful assessment was by suit against the collector and the statute authorizing the same provided that such action could not be maintained unless the protest was made in writing and signed by the claimant. In the cited case the action was brought by the nonresident owner and it was urged that the protest signed as before stated would not support the action. While the right of recovery was denied because the protest itself was not sufficiently specific, yet as the initial issue in that case the court fully considered the objection above stated, held that the protest by the consignee in his name was the protest of his principal if he saw fit to adopt it, and that the statute then under consideration (1 Stat., 675) providing that the consignee prior to the entry and payment, or securing the payment of duties on merchandise, etc., "shall be

held to be the owner of the property" did not prevent the real owner from bringing suit to recover duties unlawfully exacted under the act of February, 1845 (5 Stat., 727), which provided that the action against the collector to recover duties paid under protest could not be maintained unless the protest was made in writing and signed by the claimant.

In Gray *v.* Lawrence (Fed. Cas., No. 5722) the consignee, who was the agent of the importer, entered the goods and filed a written protest against the assessment. In an action by the importer against the collector, the Government, relying on the same act of 1845, again contended that the action could not be maintained because the protest was not signed by the claimant of the goods personally. Following the case of Mason *v.* Kane, *supra,* the court overruled this contention, saying that "an entry or protest made by an agent is in law made by the principal," and that the act of 1845 did not necessarily impugn that general principle.

In G. A. 4038 (T. D. 18725) the importation of merchandise of American manufacture was made by a party other than the exporter thereof, the entrant being the consignee. It was objected that free entry could not be granted because the merchandise was not imported by the exporter as required by the statute. The board found upon the evidence that the importer was in fact the agent of the exporter and sustained the protest in the agent's name upon the ground "*Qui facit per alium facit per se.*" See also Whitney *v.* Wyman (101 U. S., 392, at 395 and 396), Grandmange *v.* Schell (32 Fed., 655), and Herman *v.* Schell (18 Fed., 891).

Protests are commercial rather than legal documents and the trend of decisions respecting them is that they are not required to conform to the technical precision of legal documents either as to phraseology or formality of execution and when upon the hearing of the case before the Board of General Appraisers it appears that the protestant *in fact* sustains the required statutory relation to the merchandise, we think they ought not to be dismissed.

To the argument of the Government that if this protest be held good in the particulars now under consideration, there may in like cases be an embarrassment in collecting duties on reliquidation, or that the Government may be made an unwilling party to a private dispute between principal and agent, it may be said that if the merchandise is not delivered to the importer or if delivered a bond is taken to secure the further payment of duties, one of which alternatives, as we understand, exists in cases of this kind, the embarrassment suggested would be no greater than in the case of any importation, and so far as involving the Government in a dispute between the principal and the agent, we do not see how that could occur. This is not a case which involves the binding force and effect of a

contract made by an agent, but rather is a question of practice or procedure under a statute providing how an action may be instituted. If recovery is had by the agent in this proceeding, the agent is in duty bound to account to his principal. The Government having refunded, if such be the judgment, is not further liable and is not a party to any dispute which may arise between the principal and the agent.

There remains for consideration and disposal, however, the further question as to whether or not the protest can be sustained upon its merits. It may again be noted that the Board of General Appraisers, having dismissed the protest as hereinbefore set forth, did not consider either the question of agency or the dutiability of the merchandise.

Is the importation entitled to free entry under paragraph 555 above quoted or shall the collector's assessment be·upheld? The relevant part of paragraph 449, under which the collector acted, provides that "diamonds, coral, rubies, cameos, and other precious stones and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry shall pay a duty of ten per centum ad valorem." The appellants contend that paragraph 555 is applicable and upon them falls the burden of sustaining this claim. With reference to that they fail to suggest wherein the *evidence* supports this contention but urge that this question is *res adjudicata*, because in G. A. 7364 (T. D. 32525) the board held that opals having a rough surface removed by cutting and polishing for the purpose of ascertaining the character of the stones, the polishing having been done by the miners who dug the minerals out of the earth, were entitled to free entry. This claim is based upon the fact that the evidence of the record is, and it was given by a Government examiner, that the merchandise in the case at bar is exactly like that involved in the case last cited. In that case the board in its opinion said that the "concurrent testimony of all the witnesses is to the effect that the merchandise has not been advanced either in value or condition; but that it has in fact been reduced in value and its commercial availability impaired by the unskilled work of the miners." The appraiser in that case, as in this, had reported in substance that the opal had been advanced in value and condition from its natural state by having one surface polished. In the case before us, no samples are produced and we must be guided by the evidence introduced before the board. No effort was made to incorporate the record of the former case herein and the appellants must stand or fall upon the evidence here, which is, as stated, that the merchandise is exactly like that in the former case. We have no evidence whatever, as was introduced in the former case, that the merchandise has not been advanced in value but has in fact been reduced by the

polishing process. Paragraph 555 provides that in order to be entitled to free entry the articles described in that paragraph must be rough or uncut and not advanced in value or condition from the natural state by cleaving, splitting, cutting, or other process. While upon the testimony introduced before them in the other case, the board might have been justified in holding that paragraph 555 did not cover the merchandise there in question, we think it can not be said such holding is *res adjudicata* of the issue here; when there is no such evidence as was introduced in that case. We are unwilling to say that these opals are rough or uncut and not advanced in value or condition from their natural state by cleaving, splitting, cutting, *or other process.* Concededly, one surface has been polished. What processes were employed in producing that result we are not informed, neither do we know when it was done, and there is no evidence that the treatment to which it has been subjected has not advanced its value. Because in the former case it was found that the merchandise had not been advanced in value does not justify us in inferring it is so in this case.

To bring the importation here within the rule of that case it was incumbent upon the appellants to show substantially the same facts, and the absence of such showing leaves us no alternative but to uphold the collector's assessment. Therefore, while we do not concur in the conclusion of the board based upon the reasons stated by it, nevertheless the proper entry in this case is that its judgment sustaining the collector's classification be *affirmed.*