(A.R.D. 175)

Wilmington Shipping Company v. United States

Entry No. 1160, etc.

Third Division, Appellate Term

(Decided May 12, 1964)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the appellant.
*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.

Before Donlon and Richardson, Judges

Richardson, Judge: This is an application which was filed by the importer for a review of the decision and judgment of a single judge, sitting in reappraisement, which dismissed the importer's appeals for reappraisement for untimeliness on the oral motion of the Government made prior to trial. (*Wilmington Shipping Company v. United States*, 50 Cust. Ct. 366, Reap. Dec. 10428.)

The facts are not in dispute. The merchandise involved in the several appeals which were consolidated for trial consists of plywood of Japanese origin, which was imported at Wilmington, N.C., from England during the period between April and September 1959. Entry was made by Wilmington Shipping Company, appellant

herein, on behalf of the English seller, United Plywood Co., and for the account of either Thomason Plywood Corp. or Thomason Sales Co., both of Fayetteville, N.C., the American purchasers. According to the commercial invoices filed with the entry papers, the contract covering the shipments provided for the payment of duty by the seller up to 20 percent of its f.o.b. England price. And the role of the appellant in the transactions here involved was that of forwarding agent for the foreign seller in getting the merchandise to the purchasers, duty paid. Upon appraisement, the merchandise was advanced in value on all of the involved entries except one, namely, entry No. 1372 in R60/6704; and notice of appraisement was duly given under all of the subject entries to the appellant.

The record shows that the appraisements were completed on October 9 and October 30, 1959, and that notices of appraisement were given on numerous dates between October 14 and November 5, 1959. However, prior to the completion of appraisement and in September 1959, a notice of probable unpaid duties (plaintiff's exhibit 1) was given to one of the purchasers (Thomason Plywood Corp.) by the appraiser, a copy of which appears to have been sent to the appellant. The notice pertained to some but not all of the entries here involved, and covered still other entries which are not the subject of these appeals. Thereafter, reference to the notice was made in a letter, dated October 15, 1959, and sent to the appraiser by the seller (plaintiff's exhibit 2A), requesting clarification of appraisement methods in order to enable the seller to assist its customer, Thomason Plywood Corp., in responding to the notice.

The appraiser never answered the seller directly. However, the appraiser wrote a letter to Thomason Plywood Corp. (plaintiff's exhibit 2B), dated October 20, 1959, in which he explained in detail the basis and the mechanics of the appraisements. He enclosed a copy of the letter for the purpose of having it forwarded to the English seller, and also sent a copy of the letter to the appellant. The seller replied by writing a letter to the collector under date of October 28, 1959 (plaintiff's exhibit 2C), stating:

We are in receipt of the copy of the communication addressed by you to Thomason Plywood Corporation for transmission to us, and thank you for the clear exposition of the manner in which duty should be assessed.

It is agreed that unnecessary complications can be avoided by the adoption of the correct initial procedure. To this end we propose from today's date to supply to our customers an additional copy of any Contract made, which they should pass over to you without delay.

We regret that duty has hitherto been calculated on F.O.B. Cost, and not current value, and we propose to submit an amended schedule of past shipments based on the correct evaluations for duty purposes. This may entail some delay due to the work involved, and we would claim your indulgence in extending

the validity dates of these cases which you have already brought to the attention of the importers.

In future in column 7 of the Special Customs Invoice, under the heading of "Current Unit Price for Export to United States," the correct particulars of "value" and not "cost" will be given. We shall also supply an additional form showing how the Duty payable has been arrived at.

Trusting that this information will be sufficient for your purposes,

> We remain,
> Yours faithfully,
> p.p. United Plywood Company.
> D. Peskin

The seller wrote a follow-up letter to the collector, dated November 5, 1959 (plaintiff's exhibit 2D), stating:

Further to our letter of 28th October, we find that we have inadvertently included in all our past F.O.B. values the freight from Japan to Europe. All these previous shipments have come *via* Europe but have never been landed, and consequently we understand that the basis of calculation of F.O.B. value for Duty purposes should have been the current F.O.B. Japan value, as Duty is not payable on freight charges.

We propose to draw up the schedule referred to in our previous letter on this amended basis, and trust to have your confirmation that our interpretation of procedure is correct.

> Yours faithfully,
> p.p. United Plywood Company.
> D. Peskin

Neither of these letters was answered by the collector. Thereafter, and on March 7, 1960, formal notices of appeal for reappraisement covering the entries at bar were filed with the collector on customs Form 4305 by the appellant.

On the basis of the foregoing facts, the Government moved for dismissal of the appeals when the cases were called for trial, upon the ground that the appeals had not been filed within 30 days of the giving of notice of appraisement. The trial court granted the motion and dismissed the appeals. The court concluded that the formal appeals, filed on March 7, 1960, were untimely, and that the aforementioned letters did not constitute reappraisement appeals as contended for by the appellant, because they lacked minimal requirements of an appeal. The court further concluded that the author of the letters, that is, the English seller of the merchandise at bar, was not a party permitted to file reappraisement appeals herein within the meaning of the statutes.

In the application before us, the appellant contends that the trial court erred in finding and holding that the English seller was not the "consignee or his agent" and was not authorized to file reappraisement appeals affecting the involved merchandise, that the seller was not authorized to, or did not, act in the capacity of the consignee's agent, and that plaintiff's exhibits 2C and 2D, individually or collectively,

were not valid reappraisement appeals. Appellant's counsel, in effect, is asking the court to divest one of his clients of rights to pursue reappraisement appeals filed by such client, in order to clothe still another of his clients with rights to pursue reappraisement litigation herein. And in upholding rights of the second client under so-called appeal documents authored by it, we are asked, in effect, to graft into these documents amendments derived from the reappraisement appeals filed herein by the first client. This seeming dilemma, we are told by appellant's counsel, has been brought about by the collector's refusal to treat the documents of the second client as reappraisement appeals in the first place, thereby necessitating the filing of appeals, concededly untimely, by the first client in order to bring the matter before the court for adjudication.

The applicable provisions of 19 U.S.C.A., section 1501 (section 501, Tariff Act of 1930, as amended), read:

> The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed . . . by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. . . .

In support of the contention that the language "consignee, his agent," as written into section 1501, *supra*, applies to the foreign seller, appellant draws attention in its brief to the record at pages 4 and 5 where the testimony of Edward C. Snead, customs broker, and former assistant collector at the port of entry, was elicited on direct examination, as follows:

> Q. Who is the consignee in these various appeals that are now before the Court?—A. The Wilmington Shipping Company is the importer of record. The consignee in some cases is the Thomason Plywood Corporation, and in some cases the United Plywood Company of London, England. In all cases, however, the United Plywood Company was the principal in that they sold the merchandise, costs, insurance and duty paid, and that was in accordance with their contract with Thomason Plywood Corporation which, as noted on each invoice, was filed with each of the entries involved in this case.

> Q. So that if the United Plywood Corporation is not noted as the consignee, they would be acting as the consignee in the payment of the duties in all these entries?—A. That is right.

Factually, the record before us shows that all of the involved entries were made and signed by the Wilmington Shipping Company, the appellant herein, and on the account of either Thomason Plywood

Corp. or Thomason Sales Co. The name of United Plywood Co. does not appear on any of the entry papers, but only on the invoices where its name appears as the seller of the merchandise, along with the name of Thomason Plywood Corp. or Thomason Sales Co., as the case may be, as the purchaser. The record also shows that entry was made in each instance on the basis of a carrier's certificate designating Wilmington Shipping Company as owner or consignee of the merchandise, and a declaration of Wilmington Shipping Company as nominal consignee of the merchandise in which Thomason Plywood Corp. or Thomason Sales Co., as the case may be, was declared to be the owner. No owner's declaration was filed, however, and the merchandise was released to Wilmington Shipping Company. And, as previously noted herein, notices of appraisement covering all of the involved entries were given to Wilmington Shipping Company.

It is abundantly clear on these facts that Wilmington Shipping Company and not United Plywood Co. is the "consignee" of the merchandise at bar within the meaning of 19 U.S.C.A., sections 1483 and 1484(h)[1] (sections 483 and 484(h), Tariff Act of 1930), which controlled the manner in which entry was made herein. Section 1501, *supra*, as noted herein, limits the right of instituting reappraisement proceedings to consignees and their agents. And sections 1483 and 1484(h), *supra*, define the persons who constitute consignees for the purpose of making entry of merchandise herein. It is not to be supposed that the term "consignee," as used in sections 1483 and 1484 (h), *supra*, has any different meaning than that attached to its use in section 1501, *supra*. These statutes must be read together to enable one to grasp the impact of the term "consignee," as it relates to reappraisement proceedings. It is obvious that Congress intended to provide, in section 1501, *supra*, a judicial forum for the adjustment of grievances of those, among others, who become indebted to the Gov-

---

[1] § 1483. Consignee as owner of merchandise

For the purposes of this subtitle—

(1), All merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned; and the holder of a bill of lading duly indorsed by the consignee therein named, or, if consigned to order, by the consignor, shall be deemed the consignee thereof. The underwriters of abandoned merchandise and the salvors of merchandise saved from a wreck at sea or on or along a coast of the United States may be regarded as the consignees.

(2) A person making entry of merchandise under the provisions of subdivision (h) or (i) of section 1484 of this title (relating to entry on carrier's certificate and on duplicate bill of lading, respectively), shall be deemed the sole consignee thereof.

* * * * * * *

§ 1484. Entry of merchandise—Requirement and time

* * * * * * *

(h) Any person certified by the carrier bringing the merchandise to the port at which entry is to be made to be the owner or consignee of the merchandise, or an agent of such owner or consignee, may make entry thereof, either in person or by an authorized agent, in the manner and subject to the requirements prescribed in this section (or in regulations promulgated hereunder) in the case of a consignee within the meaning of paragraph (1) of section 1483 of this title.

ernment for customs duties and taxes by reason of the importation and entry of merchandise pursuant to sections 1483 and 1484(h), *supra*. Hence, a contractual obligation between parties respecting the payment of duties is of no significance in determining whether an interested party is a consignee. Only a statutory obligation for the payment of duties has any relevancy for such purpose. And under the involved statutory criteria neither the foreign seller nor the American purchaser of the merchandise at bar can be regarded as the consignee, since neither of these interested parties was indebted to the Government for customs duties. The role of the appellant in entering the merchandise on the carrier's certificate and on its own declaration as consignee and in taking possession of the merchandise upon its release from customs custody makes it solely responsible to the Government for the payment of duties on such merchandise. Under analogous circumstances in *Baldwin* v. *United States*, 113 F. 217, certiorari denied, 184 U.S. 700, the court sustained the liability of the forwarding agent to the Government for additional duties, stating, at page 218:

The government is not called upon to hunt up any ultimate consignee when there is a primary consignee to whom the goods are sent, and who himself presents the invoice, makes the entry, receives the bill of lading, and gets the goods; thus being himself their "importer." . . .

It follows that the right to institute and maintain reappraisement proceedings affecting the entries at bar devolved exclusively upon the appellant by reason of such liability. And it was consistent with such right for the collector to have given notices of appraisement to the appellant rather than to any of the other interested parties.

Inasmuch as the right to file reappraisement appeals herein belonged to appellant, it becomes necessary to consider plaintiff's exhibits 2C and 2D in the light of whether the author of these documents, United Plywood Co., was appellant's agent for the purpose of instituting reappraisement appeals as is alternatively claimed by appellant. There is nothing in the record which suggests anything more than a self-appointed agency in this regard. There is no record evidence of authorization from the appellant to United Plywood Co. to institute reappraisement proceedings as agent, written or otherwise. And, from the context of the documents themselves, it appears that United Plywood Co. was acting entirely on its own, rescinding and proposing commercial practices on its own account.

Furthermore, it does not appear that United Plywood Co. could qualify as agent of the consignee for instituting reappraisement proceedings. The kind of agency which is provided for in section 1501, *supra*, is one which of necessity antedates the appraisement. It is apparent from the first sentence of section 1501, *supra*, that the existence and identity of the consignee's agent is a predetermined factor in the collector's choice of a candidate to whom to give the statutory

notice of appraisement in appropriate cases. To paraphrase the words of the court in *Baldwin* v. *United States, supra,* the collector is not called upon to hunt up, at his peril, an agent of the consignee for the purpose of giving the notice of appraisement. He need only look to the record of official proceedings before him to determine who has theretofore acted in such capacity in making entry of imported merchandise. And the giving of notice to such person as agent obviates the necessity for giving notice to other interested parties. *E. Taranger, Inc.* v. *United States,* 47 Cust. Ct. 179, C.D. 2299. Inasmuch as United Plywood Co. did not make entry of the involved merchandise as the authorized agent of the consignee as provided by the statutes, recognition of it subsequently as the consignee's agent appears to be precluded insofar as the institution of reappraisement proceedings is concerned. The statute (section 1501, *supra*) "expressly limits such right to the party immediately responsible for the importation and entry of the merchandise, and who is directly liable for the payment of duty resulting from the importation." *Match Import Co., Inc.* v. *United States,* 4 Cust. Ct. 694, 697, Reap. Dec. 4762. An interpretation of the term "consignee's agent" as broad as that contended for herein by appellant would open the door for protracted litigation waged by persons who have no financial interest in the outcome of the proceedings, or who are not before the court or within its jurisdiction, or even subject to its process and mandates. Obviously, Congress did not intend that such should be the case under section 1501, *supra,* in view of the delimiting choice of words with which it enacted the statute.

We are, therefore, fully in accord with the findings and conclusion of the trial court that United Plywood Co. is not the consignee or the consignee's agent herein. And since that firm had no right to institute and maintain reappraisement proceedings affecting the involved entries, its efforts so to do have no legal consequence. For the reasons stated, the judgment of the trial court is affirmed.

Judgment will be entered accordingly.