WILMINGTON SHIPPING COMPANY v. UNITED STATES (No. 5184)*

United States Court of Customs and Patent Appeals, May 24, 1965

*Allerton deC. Tompkins* for appellant.

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Harvey A. Isaacs, Bernard J. Babb* for the United States.

*C.A.D. 861.

[Oral argument April 5, 1965 by Mr. Tompkins and Mr. Babb]

Before Rich, Acting Chief Judge, and Martin, Smith, and Almond, Jr., Associate Judges

Smith, Judge, delivered the opinion of the court:

█ Wilmington Shipping Company appeals from the judgment of the United States Customs Court (Third Division, Appellate Term), 52 Cust. Ct. 650, A.R.D. 175, affirming the dismissal, by a single judge sitting in reappraisement, of certain consolidated appeals.

The merchandise involved is plywood shipped from England during the period between April and September of 1959 by United Plywood Company of London and consigned to Wilmington Shipping Company of Wilmington, N.C., for the account of either Thomason Plywood Corp. or Thomason Sales Co., the American purchasers. The contract between United Plywood and the purchasers provided for the seller to pay the duty.

Appraisement of the merchandise, advancing it in value in the case of all shipments but one, was completed on October 9 and October 30, 1959, and notices of appraisement were given on various dates between October 14 and November 5, 1959. In September of 1959, however, a notice of probable unpaid duties as to some of the entries was given to Thomason Plywood Corp. by the appraiser. Subsequently, United Plywood, in a letter dated October 15, 1959, requested clarification of the methods of appraisement to assist Thomason Plywood Corp. in responding to the notice.

On October 20, 1959, the appraiser wrote a letter to Thomason Plywood Corp. explaining in detail the basis and mechanics of the appraisements, enclosing a copy for forwarding to United Plywood and also sending a copy to Wilmington Shipping Company, the consignee. United Plywood then wrote the collector a letter dated October 28, 1959, as follows:

We are in receipt of the copy of the communication addressed by you to Thomason Plywood Corporation for transmission to us, and thank you for the clear exposition of the manner in which duty should be assessed.

It is agreed that unnecessary complications can be avoided by the adoption of the correct initial procedure. To this end we propose from today's date to supply to our customers an additional copy of any Contract made, which they should pass over to you without delay.

We regret that duty has hitherto been calculated on F.O.B. Cost, and not current value, and we propose to submit an amended schedule of past shipments based on the correct evaluations for duty purposes. This may entail some delay due to the work involved, and we would claim your indulgence in extending the validity dates of these cases which you have already brought to the attention of the importers.

In future in column 7 of the Special Customs Invoice, under the heading of "Current Unit Price for Export to United States," the correct particulars of

"value" and not "cost" will be given. We shall also supply an additional form showing how the Duty payable has been arrived at.

Trusting that this information will be sufficient for your purposes,
We remain,

Yours faithfully,

p. p UNITED PLYWOOD COMPANY.

D. PESKIN

It also wrote the collector a follow-up letter dated November 5, 1959, stating:

Further to our letter of 28th October, we find that we have inadvertently included in all our past F.O.B. values the freight from Japan to Europe. All these previous shipments have come *via* Europe but have never been landed, and consequently we understand that the basis of calculation of F.O.B. value for Duty purposes should have been the current F.O.B. Japan value, as Duty is not payable on freight charges.

We propose to draw up the schedule referred to in our previous letter on this amended basis, and trust to have your confirmation that our interpretation of procedure is correct.

The collector did not reply to those letters.

On March 7, 1960 Wilmington Shipping Company filed formal notice of appeal for reappraisement covering the entries at bar.

Upon the cases being called for trial, the Government moved for dismissal of the appeals on the grounds that they were not timely taken. After permitting appellant to introduce evidence on the question, the trial court granted the motion. In doing so, it held that the notices filed by Wilmington Shipping Company on March 7, 1960 were filed outside the period set by statute for bringing an appeal and that the earlier letters of United Plywood were not in compliance with other statutory requirements for appeals. The Appellate Term agreed as to both grounds.

The taking of an appeal for reappraisement is governed by section 501 of the Tariff Act of 1930 (19 USC 1501), as amended. The pertinent provisions read:

The collector shall given written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties *unless a written appeal for a reappraisement is filed* * * * *by the consignee or his agent* with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. * * * [Emphasis added.]

It is clear, and apparently undisputed, that the formal notices filed by Wilmington Shipping Company on March 7, 1960 were submitted

long past the end of the thirty day period set by the statute and hence were ineffective. Therefore, the only issue here is whether the aforementioned letters of United Plywood Company can function as the "written appeal for a reappraisement" required by section 501.

The appellant, Wilmington Shipping Company, concedes that it "made the entries under review in its own name" and was the consignee for tariff purposes "under the definitions prescribed by sections 483 and 484(h) of the Tariff Act of 1930 (19 U.S.C.A., sections 1483 and 484)."[1] However, it asserts that the "appeals," meaning the letters from United Plywood, "were filed by the party who shipped the goods and who was responsible for the duties," apparently referring to the fact that United Plywood was obligated through contract with the purchasers to pay the duty. Appellant further urges:

> We contend that Section 501 should continue to be construed liberally so as to permit the party who is liable to the "consignee" for the duties, to contest an excessive appraisement. Such an aggrieved party should be regarded, as the statute permits, as the agent of the consignee.

While recognizing that ▮ statutes giving the right of appeal are liberally construed,[2] we are unable to conclude that the interpretation of section 501 which appellant seeks here is warranted. Wilmington Shipping Company clearly and admittedly was the consignee of the merchandise and was solely responsible to the Government for the payment of duties on it. United Plywood was the importer or seller and its contractual liability to the purchasers obviously does not change its status to that of consignee.

---

[1] SEC. 483. CONSIGNEE AS OWNER OF MERCHANDISE

For the purposes of this title—

(1) All merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned; and the holder of a bill of lading duly indorsed by the consignee therein named, or, if consigned to order, by the consignor, shall be deemed the consignee thereof. The underwriters of abandoned merchandise and the salvors of merchandise saved from a wreck at sea or on or along a coast of the United States may be regarded as the consignees.

(2) A person making entry of merchandise under the provisions of subdivision (h) or (i) of section 484 (relating to entry on carrier's certificate and on duplicate bill of lading, respectively) shall be deemed the sole consignee thereof.

\*       \*       \*       \*       \*       \*

SEC. 484. ENTRY OF MERCHANDISE

\*       \*       \*       \*       \*       \*       \*

(h) Entry on Carrier's Certificate.—Any person certified by the carrier bringing the merchandise to the port at which entry is to be made to be the owner or consignee of the merchandise, or an agent of such owner or consignee, may make entry thereof, either in person or by an authorized agent, in the manner and subject to the requirements prescribed in this section (or in regulations promulgated hereunder) in the case of a consignee within the meaning of paragraph (1) of section 483.

[2] Appellant cites the following in its brief:

"It is well established that statutes giving the right of appeal are liberally construed in furtherance of justice"—*Lewis' Sutherland Statutory Construction, Section 717.*

It is also our opinion that United Plywood cannot be regarded as the agent of the consignee in writing the letters in question. As the Appellate Term stated:

* * * There is nothing in the record which suggests anything more than a self-appointed agency in this regard. There is no record evidence of authorization from the appellant to United Plywood Co. to institute reappraisement proceedings as agent, written or otherwise. And, from the context of the documents themselves, it appears that United Plywood Co. was acting entirely on its own, rescinding and proposing commercial practices on its own account.

The consignee, as the one liable to the Government for payment of the duties, was also the one to whom the Government would be expected to look for notice of an appeal in the absence of action advising it that United Plywood was authorized to act as agent. We therefore agree with the Appellate Term in its conclusion:

* * * An interpretation of the term "consignee's agent" as broad as that contended for herein by appellant would open the door for protracted litigation waged by persons who have no financial interest in the outcome of the proceedings, or who are not before the court or within its jurisdiction, or even subject to its process and mandates. · Obviously, Congress did not intend that such should be the case under section 1501, *supra*, in view of the delimiting choice of words with which it enacted the statute.

The trial court also questioned the sufficiency of United Plywood's letters as notices of appeals. The court recognized that ▮ the statute does not prescribe the form of the notice of appeal for reappraisement but observed that "there must be something about the document purporting to constitute the appeal which identifies the entry, and indicates that a reappraisement is requested." We think that observation is correct and also agree with the further comments of the court as follows:

There is little, if anything, in the letters upon which plaintiff relies to comply with these minimal requirements. The letter, dated October 28, 1959, merely requests an extension of "the validity dates of these cases which you have already brought to the attention of the importers" to afford the exporter an opportunity to supply "an amended schedule of past shipments based on the correct evaluations for duty purposes." The November 5th communication gives details of an alleged erroneous inclusion in the f.o.b. prices stated on the invoices of "all these previous shipments" of freight from Japan to Europe, as the basis upon which the amended. schedules will be drawn. Neither letter definitely identifies particular entries, nor specifically challenges values already returned by the appraiser. Although the phraseology employed clearly evidences unfamiliarity with American customs procedures, seemingly, the object of the writer was to delay, rather than to seek judicial review of, any action by the appraiser.

The judgment of the Appellate Term is *affirmed*.

WORLEY, C.J., took no part in the consideration or decision of this case.