(R.D. 11195)

BASF Colors & Chemicals, Inc. v. United States

Entry Nos. 1074971; 898394.

(Decided June 20, 1966)

*Sharretts, Paley & Carter* (*Eugene F. Blauvelt* and *Howard Clare Carter* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

WILSON, Senior Judge: The above appeals for reappraisement were consolidated for purposes of trial. The merchandise is invoiced

as hexamethylenediamine 85 percent (hereafter referred to as HMD) which was manufactured and exported by Badische Anilin & Soda-Fabrik, AG, of Ludwigshafen, Germany, on December 28, 1961, and June 16, 1963, in R63/10631 and R63/9911, respectively. The importer is Biddle Sawyer Corp. of New York, N.Y. The appeals were filed by BASF Colors & Chemicals, Inc.

Entry was made at $1.13 per pound, less nondutiable charges on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. This merchandise is not enumerated in the "Final List" published in T.D. 54521.

Appraisement was made at $1.83 per pound on 100 percent purity basis, net packed, under American selling price section 402(e) of said amended act, as the appraiser determined the merchandise to be dutiable under paragraph 27(a)(3)(5) of the Tariff Act of 1930, as amended, at 25 percent ad valorem and $3\frac{1}{2}$ cents per pound.

The plaintiff contends that the merchandise is not provided for in said paragraph 27(a)(3)(5) and is, therefore, not subject to appraisement on the basis of American selling price as "it is not a coal-tar product even though derived in part from benzene, because it does not have the chemical structure of a coal tar product; it is an aliphatic and not an aromatic compound" and also "that the imported material is not similar to any of the products named in either paragraph 27 or 1651 for the same reason."

The Government contends that the merchandise is a derivative of a coal-tar product and, therefore, was properly appraised on the basis of American selling price.

At the outset, we are confronted by the contention of the defendant that the court is without jurisdiction to hear and decide the appeals at bar. This matter must be disposed of before passing to the consideration of the cases on their merits. On this question, raised for the first time in defendant's brief, a point of law only is presented since there is no controversy concerning the pertinent facts.

The plaintiff's first argument on this point is that the defendant's objection to the court's jurisdiction was untimely. It was not necessary, however, that the Government challenge the court's jurisdiction before or during the trial. That question may be raised at any time for clearly a decision of a court without jurisdiction is a nullity. Our appellate court has, as a matter of fixed practice, heard arguments against the jurisdiction of the Customs Court even though the matter was not raised in the trial court. In fact, the Court of Appeals, where questions of law only are involved, has heard and determined such questions even though not involving jurisdiction. See *United States* v. *Collin & Gissel (Ludwig Baer)*, 29 CCPA 96, C.A.D. 176.

In the case of *United States* v. *Klytia Corporation*, 29 CCPA 109, C.A.D. 178, the court *sua sponte* raised the question of jurisdiction, although it was not referred to in the tribunals of the Customs Court and not presented by counsel for either party at any stage of the proceedings in the lower or the appellate court. On this point, page 113, the court stated:

During our study of the case we discovered a jurisdictional question in connection with the so-called duress entries which was not referred to by the tribunals of the Customs Court and which was not raised by counsel either below or here, but which under numerous authorities it is our duty to raise *sua sponte* and act upon. * * *

It was, therefore, not untimely for the defendant to present the question of jurisdiction for the first time in its brief. That brings us to the inquiry, does this court have jurisdiction in the case at bar?

The defendant contends that the appeals are invalid and that the court is without jurisdiction to hear and decide them because they do not conform to the requirements of 19 U.S.C.A., section 1501(a), which reads in part as follows:

§ 1501. Notice of appraisement; reappraisement

* * * The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is * * * filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court, * * *.

The defendant argues that since the importer and consignee, as appears from the official papers, is Biddle Sawyer Corporation and not BASF Colors and Chemicals, Inc., the appeals, as filed, do not comply with the requirements of 19 U.S.C.A., section 1501(a), and are, therefore, invalid. The defendant further asserts that there is no evidence in the record to indicate that the plaintiff is the consignee or agent of such consignee.

These claims, however, are not supported by the record before the court. Plaintiff's first witness, Robert Chavkin, vice president of Biddle Sawyer Corp., the consignee designated in the official papers, testified as follows:

Q. Did you authorize BASF Colors & Chemicals, Inc. to file the appeals to reappraisement which are before the Court this afternoon?—A. I did. (R. 4–5.)

This testimony stands uncontroverted. Furthermore, the official papers before the court indicate a timely filing and the notice of appeal

contains the following information: That the appeals covered "all the merchandise on which the value has been advanced by the appraiser imported in the name of Biddle Sawyer Corporation for the account of BASF Colors & Chemicals, Inc. via [steamship is named] entered at this port on 1/9/62 [as to Entry No. 898394, R63/10631] and on 6/27/63 [as to Entry No. 1074971, R63/9911]." On each appeal appears the typewritten signature of "BASF Colors & Chemicals, Inc." over the printed words "(Consignee or Agent)" and in print, "Sharretts, Paley & Carter, Attorneys, 80 Broad Street, New York 4, New York."

Under the adjudicated cases, the record is sufficient to establish a valid and timely filing of the appraisements at bar. The record amply establishes that all parties were aware that the owner and consignee of the merchandise was Biddle Sawyer Corp. and that the plaintiff signed only in its capacity as agent of the consignee and not as consignee. No one was misled in any way through the method followed in perfecting the appeals.

A typewritten signature, if authorized, is sufficient to validate a document. *Veolay, Inc., J. E. Bernard & Co.* v. *United States*, 21 CCPA 268, 274, T.D. 46804, citing cases; *Clinton Smullyan Associates* v. *United States*, 35 CCPA 7, 9, C.A.D. 363, citing *Fritzsche Brothers* v. *United States*, 16 Treas. Dec. 331, T.D. 29359.

In *United States* v. *T. M. Duche & Sons, Inc., et al.*, 52 Cust. Ct. 624, A.R.D. 170, the court held that an *unsigned* appeal for reappraisement, which contained "within its four corners" the name of the importer in addition to the entry number, the name of the steamer, and the date of entry, constituted a valid appeal for reappraisement and, having been filed within 30 days after receipt of a written notice of appraisement, was sufficient to invoke the jurisdiction of the court.

The facts of record in the case at bar meet the stated facts recited by the court in the *Duche* case, *supra*.

In *Wells, Fargo & Co.* v. *United States*, 7 Ct. Cust. Appls. 346, T.D. 36903, the court held that a protest signed by the agent of the owner and importer *in his own name only* complies with the provision of subsection 14 of section 28 of the Tariff Act of 1909, that the protest must be made by the "owner, importer, consignee, or agent of such merchandise." The court stated, page 351:

Protests are commercial rather than legal documents and the trend of decisions respecting them is that they are not required to conform to the technical precision of legal documents either as to phraseology or formality of execution and when upon the hearing of the case before the Board of General Appraisers it appears that the protestant *in fact* sustains the required statutory relation to the merchandise, we think they ought not to be dismissed. [Italics quoted.]

The case of *Wilmington Shipping Company* v. *United States*, 52 Cust. Ct. 650, A.R.D. 175, affirmed in *Same* v. *Same*, 52 CCPA 76, C.A.D. 861, cited by defendant, is not controlling in the case at bar. In that case, formal notices of appeal dated March 7, 1960, were not filed within the statutory 30-day period authorized by statute, section 501 of the Tariff Act of 1930 (19 U.S.C.A. § 1501(a)). Certain letters dated in October and November 1959 were held *not* to contain minimal requirements by the trial court therein (50 Cust. Ct. 366, Reap. Dec. 10428).

Defendant also contends the appeals are subject to dismissal because the parties "have agreed to the *per se* value on either basis of appraisement" and "there is no justiciable issue remaining for decision by this Court on the reappraisement side." Defendant cites no case in support of such contention. This claim is without merit for similar agreements of counsel have frequently been made where counsel had a difference of opinion as to the *basis* for appraisement, but agreed as to the unit value in either event.

Defendant further asserts that the proper classification of the merchandise is not before the court and that the evidence in respect thereto was premature herein and immaterial to the issue of value raised by the appeals. Accordingly, it is alleged the appeals should be dismissed. No cases in support thereof are cited.

In *United States* v. *Rogers Chemical Co.*, Reap. Circ. 1149, the imported merchandise was naphthalene appraised under paragraph 27 of the Tariff Act of 1922 because the appraiser found it had a solidifying point of 79 degrees centigrade or above. The importer claimed the merchandise was free of duty under paragraph 1549 as naphthalene because it had a solidifying point *less* than 79 degrees centigrade. The only issue was the solidifying point. Evidence was admitted as to the identity of the merchandise, and the court held on such record that the merchandise had a solidifying point of *less* than 79 degrees centigrade, as claimed by the importer, and affirmed the entered value. On appeal, that decision was affirmed in Reap. Circ. No. 1530. Further appeal resulted in an affirmance, 18 CCPA 45, T.D. 44024, the court stating that one of the questions as to the validity of the appraisement was whether the imported merchandise was a "mixture" under paragraph 27 as contended for by the Government or whether it was naphthalene provided for in paragraph 1549. It was also stated that this query must be answered "in a consideration of the evidence" and that there was substantial evidence, as found and determined by the court below, that the merchandise was such naphthalene as is provided for in paragraph 1549.

In *Metz. & Co.* v. *United States*, 13 Ct. Cust. Appls. 412, T.D. 41340, the court held it is the duty of the appraiser to determine any fact

necessary for intelligent appraisement even though the particular fact might be *incidental* to classification.

See also *United States* v. *A. Hauptman, Inc.*, 25 CCPA 323, T.D. 49423; *McKesson & Robbins (Inc.)* v. *United States*, 44 Treas. Dec. 67, T.D. 39757. See also *E. M. Sergeant Co.* v. *United States*, Reap. Circ. 349.

Being fully in accord with the views expressed by the courts in the foregoing decisions, I overrule all claims of the defendant for dismissal upon jurisdictional grounds. Considering such applications as motions, they are in all respects denied.

We now proceed to consider the appeals on their merits. Counsel stipulated that the claimed export value is correct if the imported merchandise is *not* covered by paragraph 27, and that the appraised American selling price is correct if the merchandise is covered by paragraph 27. In view of this stipulation, accepted as factual by the court, it is not deemed necessary to indicate the tariff provisions for export value and American selling price. The following provisions of the amended Tariff Act of 1930 are pertinent for consideration herein:

PAR. 27. Coal-tar products:

\* \* \* \* \* \* \*

(a) (3) all products, by whatever name known, which are similar to any of the products provided for in this paragraph or in paragraph 1651, and which are obtained, derived, or manufactured in whole or in part from any of the products provided for in this paragraph or in paragraph 1651;

\* \* \* \* \* \* \*

(5) all the foregoing products provided for in this paragraph, not colors, dyes, or stains, color acids, color bases, color lakes, leuco-compounds, indoxyl, indoxyl compounds, ink powders, photographic chemicals, medicinals, synthetic aromatic or odoriferous chemicals, synthetic resin-like products, synthetic tanning materials, or explosives, and not specially provided for in paragraph 28 or 1651 \* \* \*.

\* \* \* \* \* \* \*

(c) The ad valorem rates provided in this paragraph shall be based upon the American selling price \* \* \* of any similar competitive article manufactured or produced in the United States. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based upon the United States value, \* \* \*.

PAR. 1651. Coal-tar products: \* \* \* benzene \* \* \* and all other materials or products that are found naturally in coal tar, whether produced or obtained from coal tar or other source, and not specially provided for in paragraph 27 or 28 of Title I of this Act.

During the trial counsel for plaintiff made the following concession:

MR. BLAUVELT: Now, I would, in order to clarify the record, so there can be no possible mistake as to plaintiff's position, I would like

to make a formal admission that the imported hexamethylenediamine consists in a substantial part of a product derived from benzene, in the manner described by Haarer in Plaintiff's Exhibit 1. Of course, as this witness' testimony has just demonstrated, a part of each shipment is derived from acetylene. (R. 11.)

Plaintiff offered the testimony of two witnesses besides Mr. Chavkin, *supra*, and introduced two affidavits and several other exhibits.

Defendant rested without the introduction of any evidence.

The undisputed, corroborated evidence in the record by exceptionally well qualified and experienced witnesses, clearly establishes the following facts: The imported product, HMD, is produced from benzene, a coal-tar product, and other substances; HMD is produced by the various steps set forth in exhibit 1. The structural formula for benzene contains three so-called double bonds separated from each other by three single bonds. This combination is known as a benzenoid ring or aromatic structure. HMD does *not* have this typical bond feature, but only single bonds and is known as a paraffinic or aliphatic structure. The reaction to benzene by the addition of hydrogen removes the double bonds from the benzene formula, as is described on page 2 of exhibit 1. This changes the benzene or aromatic class of chemicals to the paraffinic or aliphatic class of chemicals, and remains aliphatic until and including the production of HMD.

The common characteristic of all articles listed and described in exhibit 8, which includes the articles named in paragraphs 27 and 1651, is that they contain the benzenoid ring as illustrated in exhibit 4, typical for aromatic chemicals. None of the articles so listed contains the exclusive single bond structure of HMD typical for paraffinic or aliphatic chemicals.

By the hydrogenation of benzene, the aromatic character is completely destroyed, producing cyclohexane which is aliphatic. This is depicted in the second diagram on page 2 of exhibit 1. Benzene is the first diagram shown on page 2 of exhibit 1 and contains the benzene ring. A paraffinic compound is not a coal-tar product as it lacks the characteristic feature of the aromatic ring which all benzenoid aromatic products or chemicals usually possess.

It is not disputed that the imported HMD is obtained, derived, and produced in part from benzene, an aromatic chemical. Plaintiff's counsel conceded it. Defendant's brief alleges it was properly appraised as a coal-tar product, "even though the benzene was no longer part of the product in its compounded or manipulated condition."

Defendant contends that "every article which started with coal tar, or which had any coal-tar derivative in its manufacturing process, either finally or during its intermediate steps is a coal-tar product, and should be appraised on the basis of American selling price, unless

the party challenging the *classification* establishes that a similar or competitive article was *not* manufactured in the United States." [Emphasis supplied.]

As shown by the several cases cited, *supra*, this is a *reappraisement case which does not challenge the classification per se*, of HMD. Here, an attempt is being made to identify that product for purposes of ascertaining its proper basis for appraisement and value under the valuation statute. On the record as made, it is clear that the imported HMD, in its condition as imported, does *not* contain the coal-tar derivative of benzene. At that time it is *not* an aromatic chemical of the benzene or aromatic series, but is an aliphatic or paraffinic chemical that does *not* conform to the common meaning of a coal-tar product.

The showing of chemical differences in chemical formulae and changes from a benzenoid or aromatic chemical to a paraffinic or aliphatic chemical is not such a showing as will fully conform to the statute, paragraph 27(a)(3) providing for "products * * * which are *similar* to any of the products provided for in this paragraph or in paragraph 1651, and which are obtained, derived, or manufactured in whole or in part from any of the products provided for in this paragraph or in paragraph 1651." [Emphasis supplied.]

While on the record there is no doubt that HMD was obtained, derived, or manufactured in whole or in part from benzene, named in paragraph 1651, there is an utter lack of evidence with respect to *similarity* between HMD and the products provided for in paragraphs 27 and 1651, or contemplated by the so-called basket clause in paragraph 27(a)(3), *supra*. In this respect, substantial evidence is completely lacking. Showing chemical and/or scientific distinctions alone are insufficient to meet the statutory requirements. *Meyer & Lange et al.* v. *United States*, 6 Ct. Cust. Appls. 181, T.D. 35436, and *Bakelite Corporation et al.* v. *United States*, 16 Ct. Cust. Appls. 378, T.D. 43117.

Plaintiff's burden of proof included a showing that HMD was *not similar* to any of the products provided for in either paragraph 27 or 1651 and also was not obtained, derived, or manufactured in whole or in part from any of the products provided for in those paragraphs.

In *Charles Hardy, Inc.* v. *United States*, 21 CCPA 173, T.D. 46509, the court held that paragraph 27(d) of the Tariff Act of 1930, contemplates only a determination of similarity between an imported product and a domestic product as provided in paragraph 27(c) and that it has no relation to a determination of similarity for classification purposes under paragraph 27(a)(3). In that case, the court held that "the evidence affirmatively establishes that the imported merchandise is similar to a number of the products named in paragraph 27, within the common meaning of the word 'similar' as defined by standard dictionaries, and as that word has been defined by this court, when used

in tariff statutes, in the case of *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714, and cases therein cited."

The *Massin* case, *supra*, related to similarity for purposes of valuation under section 402(b) of the Tariff Act of 1922 rather than to classification. The court, in *Plant Products Corporation* v. *United States*, 44 CCPA 183, 188, C.A.D. 658 (in affirming the decision of this court, C.D. 1781), pointed out that in *United States* v. *Freitag & Sons, Inc., et al.*, 21 CCPA 500, T.D. 46961, "the test of similarity applied in valuation and classification cases is not the same, and while an element of similarity in one instance may also be an element of similarity in the other, 'yet an article similar for one purpose might be wholly dissimilar for another.' " Also, in *United States* v. *Morganite Brush Co.*, 18 CCPA 90, T.D. 44063, it was said that "similarity for dutiable purposes" is "a very different proposition from the question of similarity for value purposes."

There is no evidence in the case at bar that the HMD is *not* a similar competitive article with those in paragraph 27, and is not made of approximately the same materials, is *not* commercially interchangeable with any of the products named in paragraphs 27 and 1651, is *not* adapted to substantially the same uses and is not so used. These are necessary elements of proof to show that the HMD is not ordinarily similar within the meaning of the word "similar" as found in paragraph 27(c), *supra*. In the absence of such proof, plaintiff has failed to make out a *prima facie* case.

Paragraph 27(c), *supra*, states in part that "The ad valorem rates provided for" in paragraph 27 "shall be based upon the American selling price of any similar competitive article manufactured or produced in the United States." Paragraph 27(d) states that "* * * any coaltar product provided for in this Act shall be considered similar to or competitive with any imported coal-tar product which accomplishes results substantially equal to those accomplished by the domestic product when used in substantially the same manner."

The appraisement is presumptively correct by statute, 28 U.S.C.A., section 2633, and by judicial interpretation. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593. Accordingly, it must be presumed that the appraiser considered, affirmatively, that the imported HMD was a similar competitive article to one or more products mentioned in paragraph 27 or 1651 and manufactured or produced in the United States, and that the said HMD accomplishes results substantially equal to those accomplished by one or more of such domestic products when used in substantially the same manner.

In order to overcome these presumptions, it was necessary for plaintiff to establish the *negative* of the foregoing. The evidence of record fails so to do. The mere showing of differences in chemical formula structure alone, does not meet plaintiff's full measure of necessary proof to overcome the appraiser's presumptively correct findings.

On the record herein, the court finds the following facts:

1. That the imported material consists of merchandise invoiced as hexamethylenediamine 85 percent which was exported from Germany on December 28, 1961, and June 16, 1963, in R63/10631 and R63/9911, respectively.

2. The importer is Biddle Sawyer Corp. of New York, which firm authorized BASF Colors & Chemicals, Inc., to file these appeals for reappraisement.

3. The said merchandise is not enumerated on the final list published in T.D. 54521.

4. The said merchandise was obtained, derived, or manufactured in part from benzene, a coal-tar product *eo nomine* provided for in paragraph 1651 of the Tariff Act of 1930.

5. The appraiser valued this merchandise on the basis of American selling price, as defined in section 402(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, as he determined that said merchandise is dutiable under paragraph 27(a)(3)(5) of the Tariff Act of 1930, as amended.

6. That not all products which are produced, obtained, or found naturally in coal tar are benzenoid products.

7. By agreement of counsel the American selling price, in the amount as appraised, is correct if the court finds the merchandise subject to appraisement thereunder, and that the entered value is correct if the court finds that export value should be the basis for appraisement.

As conclusions of law from the foregoing facts, the court finds:

1. That this court has jurisdiction of these appeals.

2. That the plaintiff has failed to offer evidence sufficient to warrant a holding that the appraiser's presumption of correctness has been overcome; the plaintiff has not made out a *prima facie* case.

3. The presumptively correct appraised value on the basis of American selling price, as defined in section 402(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, must, therefore, be affirmed on the record as made herein.

Judgment will be entered accordingly.